# Ex parte Howard-Harrison Iron Co.

## *Petition for Mandamus, Prohibition, Etc.*

1. *Judgment rendered before appearance day, not void.*—A judgment rendered before the appearance day specified in the notice or summons, is irregular and erroneous merely, and not void.

2. *Misnomer in process amendable; judgment not void.*—Where, in the notice or summons to a tax-payer to appear and show cause against an increased valuation of its property for taxation, and the return of service, the name of defendant is given as "Howard-Harrison Pipe Works," instead of "Howard-Harrison Iron Company," its true name, the summons or notice, and also the return, are amendable, and amendable process is not void, but will support a judgment.

3. *Misnomer in judgment entry.*—The misnomer of defendant in the judgment entry does not render it void, when the record furnishes data for its amendment *nunc pro tunc*, so as to show its rendition against defendant in its true name.

4. *Legislation; bill signed and approved presumed to be correct; evidence.*—The presumption is that the bill signed by the presiding officers of the two houses of the General Assembly, and approved by the Governor, is the bill which the two houses concurred in passing, and not materially variant therefrom, and the contrary must be made to affirmatively appear by the journals of the two houses, no other evidence being admissible, before a different conclusion can be supported.

5. *Presumption of compliance with constitutional requirements, when journal silent.*—It will not be presumed from the silence of the journals on a matter upon which it is proper for them to speak, that either house has disregarded a constitutional requirement in the passage of an act, except in those cases where the organic law expressly requires the journals to show the action taken, as where it requires the yeas and nays to be entered.

6. *Jurisdiction of commissioners court to equalize assessments; how acquired under act, February 18, 1897.*—Under the act of February 18, 1897, "To amend the revenue laws of the State of Alabama," any citizen may enter such objection to an assessment as is requisite to put into operation the powers of the commissioners' court to increase the valuation of property assessed, or the court may, of its own motion, proceed to increase an assessment.

7. *Acts to amend revenue law, and tax commission law, in pari materia.*—The act of February 3, 1897, "To provide for the

more efficient assessment and collection of taxes in the State of Alabama," is to be taken *in pari. materia* with the act of February 18, 1897, "To amend the revenue laws of the State of Alabama."

8. *Scope of act of February 3, 1897.*—The act of February 3, 1897, in and of itself, confers complete authorization on the tax commissioner to submit additional assessments to the commissioners' court, and makes it the duty of the commissioners, if they are reasonably satisfied that under valuation exists, to give notice, "and try and dispose of such assessments as in other cases of undervaluations," and in section 16, by clear implication provides for an appeal by the tax commissioner in the name of the state.

9. *Term at which raises by tax commissioner to be heard.*—Construing together the acts of February 3, and February 18, 1897, proceedings by the county commissioners upon assessments made by the tax commissioner are to be had at the July term of the court, and may be concluded at the time to which they were adjourned, as provided in section 11 of act of February 3.

Howard-Harrison Iron Company, a corporation engaged in the manufacture of cast iron pipes, filed its petition for a writ of *mandamus* and a writ of prohibition, showing among other things, that petitioner, by its agent, made an assessment of its property for the tax year 1897, to the tax assessor of Jefferson county, as follows:   Personal property, $60,430.00; real estate, $13,-265.00; total, $73,695.00; that the assessor entered such assessment on the tax book and returned same with the tax list to the commissioners' court, as required by law. Thereafter, on July 16, 1898, H. L. Badham, tax commissioner of Jefferson county, filed with the commissioners' court an additional assessment raising the valuation of petitioner's real estate from $13,265.00 to $189,570.00. The further proceedings of the commissioners' court are shown by the opinion.   From the order or decree of the commissioners' court, the State, on August 18, 1897, took an appeal to the circuit court of Jefferson county and notice of the appeal was served October 28, 1897. When said cause was called for trial, in said court, on December 8, 1897, the Howard-Harrison Iron Company appearing specially for the purpose of making said motion, moved the court to dismiss the appeal and strike the cause from the docket of said court for the following reasons: "First· Because said appeal is not

authorized by law. Second. Because said circuit court has no jurisdiction to hear and determine the matters and isues sought to be raised by the papers and proceedings in said cause. Third. Because the said commissioners' court has no jurisdiction to hear and try said cause and to render the judgment appealed from. Fourth. Because the said commissioners' court had no jurisdiction to hear and determine said matters and to render said judgment on the 13th day of August, 1897. Fifth. Because the said H. L. Badham, as back-tax commissioner for Jefferson county, had no right or authority to make and present to said commissioners' court such additional assessment, and thereby to institute in and before said court the proceedings therein which are appealed from. Sixth. Because the appeal in this cause is not authorized by law. Seventh. Because there is no law authorizing an appeal to this court from a proceeding instituted by H. L. Badham, as such back-tax commissioner, for the purpose of raising the valuation of movant's property. Eighth. Because no notice, as required by law, was served upon the Howard-Harrison Iron Coompany to appear before said commissioners' court on the 13th day of August, 1897, and defend against such proceedings instituted for the purpose of increasing the valuation of its property for taxation. Ninth. Because the notice was served on the Howard-Harrison Pipe Works, and required it to appear before said commissioners' court on the 14th day of August, 1897. Tenth. Because no notice was ever issued to or served upon the Howard-Harrison Iron Company of said proceeding in said commissioners' court as required by law to give said commissioners' court jurisdiction. Eleventh. Because neither of the original papers in said cause before said commissioners' court nor a certified transcript thereof has been filed in this court. Thirteenth. Because the judgment entry of the said judgment from which this appeal is taken fails to show either that the said Howard-Harrison Iron Company appeared in person or by attorney before said commissioners' court, or that any notice of said suit or proceeding was served upon any officer of said corporation upon whom such service, by law, could have been made to give said court jurisdiction; and that, therefore said judgment, so appealed from, was rendered without jurisdic-

tion over said corporation and therefore null and void. Fourteenth. Because the act of February 18th, 1897, does not provide for giving any notice of appeal and no notice was given of this appeal to this defendant." This motion the court overruled. Thereupon the court, on motion of the State, issued a writ of *certiorari* to the commissioners' court directing them to send up a full and complete record of the proceeding in said court of said cause. The writ of *certiorari* was issued as asked for in said motion and served upon the court of county commisioners. The court made its answer or return to said writ, certifying to the circuit court a full and complete record of all the proceedings in said cause. When this return was offered to the clerk of the circuit court to file, he refused to receive or file it. A motion was then made by the Howard-Harrison Iron Company to the circuit court to compel the clerk to receive and file the answer and return of the said commissioners' court to the writ of *certiorari*. This motion was overruled. The prayer of the petition is that a writ of *mandamus* should be issued to the judge and clerk of the circuit court commanding and requiring them to file in said cause the return made by the commissioners' court in response to the writ of *certiorari*, and further, that a writ of prohibition, addressed to the judge of the circuit court, be issued, restraining him from exercising or attempting to exercise any jurisdiction in said cause, and to compel him to grant the motion made to dismiss said appeal and to strike the cause from the docket of the circuit court.

JAMES E. WEBB and B. C. JONES, for petitioner.—The records of the commissioners' court must affirmatively show every fact necessary to give jurisdiction of the person when a judgment is rendered imposing a personal liability.—*Trammel v. Pennington*, 45 Ala. 674, 687; *Joiner v. Winston*, 68 Ala. 133; *Driggers v. Cassidy*, 71 Ala. 532; *Wyatt v. Rambow*, 29 Ala. 510; *County Commissioners v. Woodstock Iron Co.*, 82 Ala. 57; *Smith v. Bank*, 5 Ala. 26. A judgment increasing an assessment creates a debt, and cannot be rendered without the statutory notice to the owner.—*County Com. v. Woodstock Iron Co.*, 82 Ala. 156-7; *Perry County v. Railroad Co.*, 58 Ala. 564; *Lehman v. Robinson*, 59 Ala. 244;

Cooley on Taxation, pp. 563-4; *Winter v. City Council,* 75 Ala. 478; *Ind. Pub. Co. v. Am. Press Ass'n,* 102 Ala. 475, 492. Material variance between an act as passed and as approved by the Governor, renders the entire act void.—*Moog v. Randolph,* 77 Ala. 597; *Sayre v. Pollard,* 77 Ala. 608. The court may examine not only the journals but other "records" kept by law, etc.—*Jones v. Hutchinson,* 43 Ala. 720; *Sangler v. Jacobs,* 14 Ill. 297; *Prescott v. I. & M. Canal Co.,* 19 Ill. 324; *Fowler v. Pearce,* 2 Cal., 165; *People v. Pendy,* 2 Hill (N. Y.) 31; *Moog v. State,* 48 Ala. 120; Code of 1896, §§2221, 2222; *Hollingsworth v. Thompson,* 12 So. 1; 23 Am. & Eng. Encyc. of Law, 201; *Walker v. Griffith,* 60 Ala. 361. The provisions for appeal in Sec. 15, Act. February 18, 1897, is invalid because the statute does not prescribe notice to the appellee.—*Richardson v. Green,* 130 U. S. 115; *Hewitt v. Tilbert,* 116 U. S. 143; 1 Desty Taxation, 592 and note 2; 2 *Ib.* 599, 600, 641; 1 Black on Judg. 220; *Marsh v. Chestnut,* 14 Ill. 223; Sheldon's Appeal, 76 Ia. 230; 2 Enc. Pl. and Pr. 249.

WARD & HOUGHTON, *contra.*—The only evidence by which the act approved may be impeached must be found in the journals.—20 Am. & Eng. Encyc. of Law 474; 23 *Ib.* 199, 200; Cooley Const. Lim. (6 Ed.) p. 162; *Hall v. Steele,* 82 Ala. 562, 565. The failure of the statute to prescribe notice on appeal does not invalidate the provision, being a matter of procedure, which the court can require.—*Brown v. Wheeler,* 3 Ala. 287; *Dugger v. Tayloe,* 60 Ala. 519. The writs prayed should not be granted, because petitioner would have a complete remedy by appeal from the proposed action of the circuit court. *State v. Henry,* 6 So. 807; *Ex parte Hamilton,* 51 Ala. 62; 63 Ala. 349.

McCLELLAN, J.—There is conflict of authority on the point whether a judgment rendered *before* the appearance day specified in the summons or notice is irregular and erroneous merely, or void. The weight of adjudged cases and texts, however, support the view that such judgment is erroneous only and not void; and we so hold.—1 Freeman on Judgments, §126, n. 3; 12 Am. & Eng. Encyc. of Law p. 147 *r.*; *White v. Crow,* 110 U S. 183; *In re* Newman's estate, 75 Cal. 213; *Stephenson v.*

*Newcomb,* 5 Harr. (Del.) 150; *Solomon v. Newell,* 67
Ga. 572; *McAlpine v. Sweetser,* 76 Ind. 78; *Ballinger v.
Tarbell,* 16 Iowa, 491; *Mitchell v. Aten,* 37 Kan. 33; s.c.
1 Am. St. 231; *Grand Rapids Chair Co. v. Runnells,* 43
N. W. Rep. (Mich.) 1006; *Woodward v. Baker,* 10 Ore-
gon 491; *McNeil v. Hallmark,* 28 Tex. 157. And hence
our conclusion that the rendition of the judgment in-
volved here on the 13th day of August, when the tax-
payer had been summoned to appear on the 14th, marks
it as an irregular and erroneous judgment; but it is not
a void one.

There was much of misdescription of and mistake in
the name of the corporation tax-payer in the proceedings
in the commmissioners' court. The tax commissioner
set down the name correctly in the assessment he sub-
mitted to the court—The Howard-Harrison Iron Com-
pany—and so it appeared in the original assessment
made by the tax assessor. In docketing the case, the
statement is this: "The State of Alabama v. Howard-
Harrison Iron Company Pipe Works." It is probable
that the additional words "Pipe Works" were employed
not as a part of the defendant's name, but as identifying
it by this reference to the character of its business. In
the summons to show cause against the proposed in-
creased valuation the defendant is called the Howard-
Harrison *Pipe Works.* The endorsements on the sum-
mons are as follows: "Original. Howard-Harrison
Iron Works. Executed by mailing a copy of the within
notice to the Howard-Harrison Pipe Works," etc., etc.
It is not denied that this notice did in fact reach the
defendant. And the order or judgment of the court
entered on the docket under the caption of the case as
set out above, is as follows: "It is ordered by the Court
of County Commissioners that the assessment of the
property of the Howard-Harison Pipe Works in this
case, lands, buildings, machinery; etc., be raised from
$73,695 to $100,000."

The summons or notice was amendable, and so also
the return, in respect of the name of the defendant com-
pany.—*Georgia Pacific Railway Co. v. Propst,* 83 Ala.
518; *Singer Manufacturing Co. v. Greenleaf,* 100 Ala.
272. And process which is amendable is not void, but
will support a judgment.—1 Freeman on Judgments,
§126. Hence, we hold that the judgment or order of

the commissioners' court was not void for the misdescription or misnomer of the defendant in the notice and return of service.

Nor is the judgment or order rendered void by its own misnomer of the defendant. By reference to the assessment made and submitted by the tax commissioner and to the docket entries preceding the entry of the order, the judgment becomes in its present form essentially one against the Howard-Harrison Iron Company; and even if that were not true the record supplies abundant data for its amendment *nunc pro tunc* so as to make it speak its rendition against the defendant by accurate statement of the name of the corporation.

But it is insisted that the commissioners' court was wholly without jurisdiction of the subject matter of this proceeding, and that therefore, of course, the judgment is absolutely void. This conclusion is sought to be rested upon the following considerations: (1.) That the revenue act of 1894-5 created county boards of equalization—bodies distinct from courts of county commissioners—and vested in said boards exclusively all powers in respect of equalizing assessments of property for taxation; and (2) that though this act of 1894-5 was in terms repealed, so far as the constitution and powers of said boards of equalization are concerned, by the act of February 18, 1897, to amend the revenue laws of the state, and all powers of equalization were thereby in terms re-conferred upon the commissioners' courts, yet said last named act is unconstitutional and void for that the bill approved by the Governor was not the bill which was passed by the General Assembly, but materially variant therefrom, and that of consequence the act of 1894-5 is still of force. The variances which petitioner supposes to exist between the bill as it passed the Senate and House, and the enrolled bill which was signed by the President of the Senate and the Speaker of the House and approved by the Governor, arose, it is insisted, upon the alleged facts that the Senate amended section 15 of the bill as it passed the House by striking out the word "defendant" after the word "court" and inserting in lieu the words "either party;" that this amendment was never concurred in by the House and thus was never passed by the General Assembly, but that it is embodied in the enrolled bill as approved by

the Governor; and that the following words: "If he has written the book in ink and has entered the names of all tax-payers in those cases where two or more parties pay on the same tract of land," were in section 11 of the bill as passed by the House, that no amendment striking them out was adopted by the Senate, or if such amendment was adopted by the Senate, it was not concurred in by the House, and that these words are not in the enrolled bill approved by the Governor. Of course the presumption is that the bill signed by the presiding officers of the two houses and approved by the Governor is the bill which the two houses concurred in passing, and the contrary must be made to affirmatively appear before a different conclusion can be justified or supported. So here, it must be made to affirmatively appear that amendments of the House bill in question were adopted by the Senate and were not concurred in by the House. And this must be shown *by the journals* of the two houses. No other evidence is admissible. The journals can neither be contradicted nor amplified by loose memoranda made by the clerical officers of the houses. To these the courts cannot look for any purpose. Nor will it be presumed from the silence of the journals on a matter upon which it is proper for them to speak that either house has disregarded a constitutional requirement in the passage of an act, except in those cases where the organic law expressly requires the journals to show the action taken, as where it requires the yeas and nays to be entered.—*Walker v. Griffith,* 60 Ala. 361; 1 Cooley's Const. Lim. 162; *People v. Starne,* 85 Am. Dec. 348 and notes; *Jones v. Jones,* 51 Am. Dec. 611, and notes; *Hollingsworth v. Thompson,* 40 Am. St. Rep. 220 and notes.

In respect of the act under consideration, the House journal shows that the bill originated in that body, was passed by it, sent to the Senate where many amendments were adopted, and was returned to the House, which refused to concur in the Senate amendments, and asked a conference upon them, appointing its members of a committee to that end, that the Senate granted the request for conference and appointed its members of the conference committee, that the conference committee met and agreed upon a report to the effect that the House should concur in Senate amendments numbered

1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 15, 16, 16½, 17, 18, 19, 20, 21, 23, 27 and 28, and that the Senate should recede from its amendments numbered 11, 14, 24, 25 and 26, and that this conference report was adopted by the House. The Senate journal shows that that body adopted quite a number of amendments to the House bill, and among others two amendments to section 15, that the House refused to concur in the Senate amendments, that a conference committee was asked and appointed, that said committee reported that the House should adopt the amendments designated by the numbers as shown above in the report to the House, and that the Senate should recede from its amendments numbered 11, 14, 24, 25 and 26; and that this report was adopted by the Senate. It is not shown by either of the journals what were the amendments adopted by the Senate, nor what were their numbers respectively, nor what the amendments which the House concurred in, nor those from which the Senate receded. It does appear from the Senate journal, as we have seen, that two amendments to section 15 were adopted; and it also appears that amendments were adopted to several other sections by reference to the section numbers, and that "various other amendments were adopted" no reference to sections being made; but the journal utterly fails to show the nature of these amendments or their numbers. It may well be for aught that the journals show or we can know that the words which petitioner insists should have been in the enrolled bill when it was signed by the President of the Senate and the Speaker of the House, and approvd by the Governor were not in the bill as it passed the House originally, or if they were, that they were stricken out by one of the "various amendments" adopted by the Senate and that the amendment to this effect was one of those which was concurred in by the House on the report of the conference committee. And so in respect of the words, "either party" which now appear in section 15 of the bill as enrolled, signed and approved: The journals do not show and we cannot know but that these words were in the bill when and as it passed the House, or, if it be conceded they were not, it does not appear from the journals but that they were put into the bill by one of the two amendments made by the Senate to that section, and that this amend-

[*Ex parte* Howard-Harrison Iron Company.]

ment was one of those which were concurred in by the House in its adoption of the report of the conference committee. It therefore does not affirmatively appear that the bill signed by the presiding officers of the houses of the General Assembly, and approved by the Governor is materially or at all variant from the bill that was passed by the General Assembly, and the objection urged against the act of February 18, 1897, "To amend the revenue laws of the State of Alabama" in this connection is wholly unsupported by competent evidence.

It follows that the commissioners' court of Jefferson county had jurisdiction of the subject matter involved in this proceeding—the equalization of the assessment of the property of the Howard-Harrison Iron Company for taxation.

It is further insisted, however, that conceding the general jurisdiction of the commissioners' court to increase assessment it yet has no power to act upon increased assessments made and submitted by the tax commissioner, since the act we have been considering takes no account of nor makes any provision with reference to the latter officer, and that, of consequence the judgment or order of the court increasing the assessment of the petitioner is void. This position is untenable. It is true the act makes no mention of the tax commissioner, his powers or duties, but under it, any citizen may enter such objection to any assessment as is requisite to put into operation the powers of the court as conferred by section 15 of the act, and the court of its own motion may proceed to increase an assessment as in this case. Moreover the act of February 3d, 1897, "To provide for the more efficient assessment and collection of taxes in the State of Alabama" is to be taken *in pari materia* with the act of February 18, 1897, and section 11 of the former act expressly makes it the duty of the tax commissioner to make and submit to the commissioners' court additional assessments of property which he considers is undervalued in the original assessment.

But aside from this, the act of February 3d in and of itself and without reference to the act of February 18th—except as re-conferring powers of equalization upon commissioners' courts—confers complete authorization upon the tax commissioner and the commissioners' court to do and perform all that has been done in

this case including the appeal taken by the commissioner in the name of the state to the circuit court, and this whether the provision of said act with reference to section 512 of the Code of 1886 be sustained or not. Section 11 confers the power and makes it the duty of the commissioner to submit additional assessments to the commissioners' court, and makes it the duty of the commissioners if they are reasonably satisfied that undervaluation exists to give notice "and try and dispose of such assessments as in other cases of undervaluations." This provision is complete in itself and capable of perfect execution without the succeeding provision "and as provided for in section 512 of the Code of 1886," and is to be upheld though the reference to section 512 of the Code should be stricken down—as an attempt to revive a law by reference to its title only—which we do not decide. And while the act of February 3d does not in express terms provide for an appeal from the action of the commissioners' court, section 16 thereof does so provide by the clearest implication.

There is nothing in the contention of petitioner that the judgment of the commissioners' court was not rendered at a term at which the court is authorized to equalize tax assessments. If the acts of February 3d and February 18th are to be taken together, the proceedings authorized by section 11 of the former act are to be had at the July term of the court. These proceedings were begun at that term and concluded on a day in August to which they were adjourned as provided in the act. If the act of February 3d is to stand apart without its provision with reference to section 512 of the Code of 1886, then no particular term of the court for action on the comissioners' assessments is prescribed. And if section 512 of the Code is to be taken as a part of it, then the term of the court which acted on the matter here involved on August 13, of necessity was the August term prescribed in that section.

We find nothing in the case made before us to authorize either of the writs prayed in the petition; and the application for *mandamus* and prohibition is denied.

Denied.