# Board of Revenue of Jefferson County et. al. v. Crow.

*Bill in Equity by Tax Payer to enjoin Board of Revenue.*

1. *Constitutionality of act of the Legislature; when act void for failure of House to show concurrence in Senate amendments to bill.*—Where a bill introduced in and passed by the House of Representatives of the Legislature, is, by the Senate of the Legislature amended in several particulars, and upon the bill being sent back to the House, there is a disagreement and non-concurrence on the part of the House in the Senate amendments, and a conference committee composed of three of the members of the House and three members of the Senate is raised, to which is referred the disagreement between the House and Senate as to said amendments, and a report from the conference committee recommends that the Senate recede from certain two of its amendments as adopted and is concurred in by both the House and the Senate, but no further action is taken by the House as to the other amendments adopted by the Senate to said bill, it would not be considered by implication that the House concurred in the other Senate amendments; and it not appearing from the journals of the House that there was a concurrence in the other Senate amendments to the bill, as required by Section 64 of the Constitution, the act enrolled and signed by the speaker of the House and the president of the Senate and approved by the Governor, which includes all the other amendments made by the Senate to the House Bill, is unconstitutional and void.

2. *Constitutionality of act redistricting the judicial circuits of the State; failure of the House journal to show concurrence in Senate amendments renders act void.*—The act approved October 12th, 1903, to provide for the redistricting of the judicial circuits of the State (General Acts of 1903, p. 566), was introduced in the House of Representatives. After the passage of the bill by the House it was sent to the Senate, and that body adopted a substitute for the original bill introduced in the House, and adopted several amendments to the substitute, and then passed the bill as amended by the substitute as amended. The said bill was then returned to the House with a message

[Board of Revenue of Jefferson Co. et al v. Crow.]

reciting that the original House Bill has been amended by the House, as above set out. The House non-concurred in the Senate amendments to said bill, and requested a committee of conference thereon. This request was complied with·by the Senate, and the House appointed a committee of three, and the Senate appointed a committee of three, which were to constitute the conference committee, and the whole matter of disagreement by the House upon all the amendments adopted by the Senate to the original House Bill was referred to the conference committee. From the conference committee there were two reports made; one report was signed by one member of the committee appointed on the part of the Senate and by all of the members appointed on the part of the House, and recommended that the Senate recede from certain two of its amendments. The other report was signed alone by the other two members of the conference committee appointed on the part of the Senate and recommended that the Senate should not recede from the amendments to the substitute introduced in the Senate for said House Bill. There was nothing said in either of said reports as to any other of the amendments offered by the Senate. The Senate and the House concurred in the report signed by four members of the conference committee; the vote of concurrence being taken· aye and no vote in the House and Senate, and the names of those voting being set out on the journal of the House and on the journal of the Senate. The bill as enrolled and signed by the Speaker of the House and President of the Senate, and which was signed by the Governor, contained all the amendments made by the Senate to the House bill, except the two certain amendments referred to in the report signed by four members of the conference committee. *Held:* That said act was not passed as required by the Constitution, in that it is not shown by the journal of the House that the House concurred in the Senate amendments to the bill as originally introduced in the House, as provided by Section 64 of the Constitution, and that such concurrence cannot be implied, and that, therefore, the said act is unconstitutional and void.

3. *Legislation; what constitutes a report of a conference committee.* A conference committee of the Legislature is composed of two distinct committees from each house of the Legislature, and each of these committees must act by a majority; and, therefore, it is essential to a valid report of a conference committee of the Legislature that such report must be signed by a majority of the members of each house composing the conference committee.

APPEAL from the Chancery Court of Jefferson.

Heard before the HON. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellee, Edward C. Crow, a resident citizen and tax payer of the county of Jefferson, State of Alabama, against the appellants, the Board of Revenue for Jefferson County, and the President of said Board, for the purpose of testing the constitutionality of an act of the Legislature, approved Oct. 12, 1903, to amend certain sections of the Code of Alabama relating to the judiciary system of the State, and which resulted in re-arranging the counties of the State into different circuits. This act of the Legislature, the title and substance of which is set forth in the opinion, provided among other things, that the 10th judicial circuit should be composed of Jefferson county, and that there should be two judges for said circuit. The bill filed by the complainant averred that under the provisions of said act, it would be necessary to provide an extra court room for the additional judge whose office was created by said act, and to purchase additional stationery and other things necessary for the discharge of the duties of said office; that the Board of Revenue of Jefferson County, by resolution, was proceeding to provide for such additional court room, and the necessary furniture and stationery for the newly created judge of the 10th judicial circuit, and that the result of such action on the part of the Board of Revenue would be to place additional burdens upon the tax payers of said county. It was then averred that said act of the Legislature was invalid and void, because it was not passed, as required by the Constitution, and that even if said act was passed, as required by the Constitution, the Legislature was without power to provide for two judges in the 10th judicial circuit, which is in violation of section 142 of the Constitution of 1901. The grounds upon which the bill seeks to have said act of the Legislature declared unconstitutional and void, as averred in said bill, were as follows: "Orator is advised and believes, and upon such advice and belief, avers that the said so-called act of the Legislature of Alabama, approved October 12, 1903, as the same was signed by the Governor, and as published in the general laws of Alabama

of 1903, pages 566 *et seq.,* was not, in truth and in fact, passed by the Legislature of Alabama, and did not become a law, for the following reason: House Bill 763 was introduced in the House, and passed the House, was sent to the Senate, where a substitute for the House Bill was reported, and then in several particulars amended, as shown by the Senate Journal; and the Senate substitute, thus amended, was sent to the House, for its concurrence, and the Senate did not pass or adopt the bill in the form in which it had left the House. Said substitute, with amendments, coming on in the House, the House non-concurred therein, and requested a committee of conference; and according to the rules of the two houses, a committee of conference on the bill was duly raised, and consisted of three members of the Senate and three members of the House; and thereafter, the following report was made, both to the House and to the Senate: [Here follows reports of conference committee, as shown in opinion]. Orator is advised and believes, and upon such advice and belief, avers that the proceedings hereinabove set forth did not, in truth and in fact, constitute a report of the Conference Committee, because there was no report from said Committee that was concurred in by a majority of the Senate conferees, as well as a majority of the House conferees; therefore, the respective houses were not authorized to take action upon said so-called minority and majority report, or either of them, as being a proper report of the Conference Committee. And orator alleges that he is advised and believes, and upon such advice and belief charges, that the true and correct interpretation of said proceedings is simply that the two houses concurred in the so-called majority report, to the effect that the Senate recede from its amendment adding the Sixteenth Judicial Circuit, and from the amendment taking Lawrence County out of the Eighth Circuit and putting it in the Sixteenth Circuit, and that the Senate thereby receded from said amendments, but that no recommendation was made as to what should be done with the remainder of said Senate substitute, and the House took no further action on the Senate substitute beyond the adoption of the majority report of the Conference Committee, as hereinabove

9

set forth; and orator alleges, that by reason of the failure of the House to vote on and adopt the Senate substitute, after the Senate had receded from two specified amendments, the said Senate substitute did not pass the House, and therefore did not and could not become a law, although the same was signed by the Speaker of the two Houses, and approved by the Governor; and orator alleges, that the Journals of the House entirely fail to show that the bill, in the form as signed by the Speaker of the House, and in the form as approved by the Governor, ever received the sanction of the House, according to the rules and requirements of the State Constitution; and orator alleges that the House, prior to the appointment of a committee of conference, non-concurred in the Senate substitute, or the Senate amendment to said House Bill 763, and he is advised and believes, and upon such advice and belief charges, that the action of the House upon the report of the Conference Committee did not amount to and cannot be held to constitute an adoption of Senate substitute, as amended, or constitute a departure by the House from its prior affirmative action of non-concurrence; and he charges that the House never did, by any affirmative action, adopt said Senate substitute, as amended, or recede from its prior action of non-concurrence. And orator alleges, that the Senate substitute as amended by the Senate receding from two specific amendments, was materially different from and by no means the same as the House Bill 763, as it passed the House and was sent to the Senate."

The prayer of the bill was as follows: "That a writ of injunction issue out of this honorable court, restraining the said A. J. Tarrant (the president of said board) and the said Board of Revenue, its officers or agents, from entering into a contract for an additional court room for a division of the Circuit Court, and from making the expenditure of money for supplies for two divisions of said court, different from what would be made for the Circuit Court of Jefferson County, presided over by only one Judge; and that upon the hearing, the said injunction be made perpetual; and orator prays for such other, further and different special relief as he

may be, in equity, entitled to, and he prays for general relief." The respondents filed an answer to said bill, admitting the averments as to the proposed action of the Board of Revenue, but denied the unconstitutionality of said act of the Legislature. The respondents also moved to dismiss the bill for the want of equity therein, and also demurred to the bill upon the following grounds: 1. It does not appear from the averments of the bill that said act of the Legislature is invalid or in conflict with any provisions of the Constitution. 2. That it appears from the averments of the bill that said act of the Legislature is a valid statute and passed in accordance with the requirements of the Constitution, and is not in conflict with the Constitution. Upon the submission of the cause upon the motion to dismiss, and the demurrer, the chancellor rendered a decree overruling each of them, and on a final submission of the cause, the chancellor granted the relief prayed for in the bill, and ordered that the respondents be perpetually enjoined and restrained from entering into a contract for an additional court room, and from making the expenditure for extra supplies, as was prayed for in the bill.

The respondents appeal and assign as error the rendition of each of these decrees.

SAML. WILL JOHN and W. L. MARTIN and WALKER & SPRAGGINS, for appellants.—The practice followed in the case at bar has had the sanction of the legislature for many years past and on at least two different occasions have questions similar to that in hand been before this court, and the law was upheld by this court, in the course of the passage of which the practice prevailed. *Abernathy v. The State,* 78 Ala. 411, 414 (House Journal 1884-5, p. 814; Senate Journal 1884-5, p. 678); *Hall v. Steele,* 82 Ala. 562 (House Journal 1886-7, p. 1010; Senate Journal 1886-7, p. 700); *Henderson v. The State,* 94 Ala. 95 (House Journal 1890-1, p. 286; Senate Journal 1890-91, p. 216-17; *Ex parte Howard &c. Co.* 119 Ala. 484; 24 So. Rep. 516.

The provisions of the Constitution of 1875 and 1901 with reference to the adoption of conference committee reports are practically the same; neither requires one

house to adopt the amendments of the other by yea and nay vote when such amendments are the subject of a conference committee report, but requires merely the adoption of such report by a yea and nay vote. Had this report set out in detail the various Senate amendments recommending that the Senate recede from two of them, and that the house accept the remainder, and the house adopted this report, no contention would or could have been made that the house should have adopted the Senate amendments separately from the conference committee report. The Constitution does not, and the courts cannot prescribe parliamentary rules and procedure for the guidance of the legislature; in fact the Constitution expressly declares that "each house shall have power to determine the rules of its proceedings." (Constitution, section 53). When the report as made by the conference committee was submitted to the respective houses and adopted, such report was thus recognized as a proper report from the committee, and the courts are bound to accept such view.

This method of dealing with conference committee reports, and the effect given them by the legislature is a practical construction of the constitutional provision relating to such reports and is entitled to great weight. 6 Am. & Eng. Ency. of Law (2d ed.), 931.

This legislative construction having been given the provision of the Constitution of 1875, and the same provision in substance having been adopted with the Constitution of 1901 in the light of this legislative construction, must be held to be a constitutional recognition of its correctness.—Constitution of 1875, Art. 4, Sec. 22; Constitution of 1901, Sec. 64; *Hunt v. Wright,* 70 Miss. 298; 11 So. 608; *Jackson v. State,* 90 Ala. 590, 594 and cases cited.

What was the legal effect of the adoption of the report of the Conference Committee by the House, by an aye and nay vote entered on its Journal? The answer is, by every one at all familiar with the legislative procedure, that the House having through the Committee of Conference, induced the Senate to recede from the two important amendments adopted by the Senate, thus leaving the Bill substantially as it was passed by the

House, that, by adopting the report of Conference Committee the House adopted or concurred in all the Senate amendments., from which the Senate *did not recede.* This is as true as though it had been written in the report of the Conference Committee, that, "the House concur in all the other Senate amendments." This was what every Representative knew was the meaning of the formal solemn action of the House in adopting the report of the Conference Committee, by an aye and no vote entered on the Journal; for it is true in reference to this action by the House, that *"expressio unius est exclusio alterius."* With a slight change in words, but no change in meaning, or applicability, we confidently quote from the opinion of this Court: "The enumeration of the two amendments specified in the report, is by irresistable implication an exclusion of all other amendments not named to be receded from."—*Powers v. Andrews,* 84 Ala. 292; *Ex parte Howard-Harrison I. Co.,* 119 Ala. 491-2; *Pearson v. Lord,* 6 Mass. 81-4; *Commonwealth v. Bookshire L. I. Co., 98 Mass., 29; Smith v. McCullough,* 104 U. S. 25; *Elyton Land Co. v. Birmingham,* 89 Ala. 481.

"The doctrine universally applied to all instruments of writing, is that what is implied is as much a part of the instrument as what is expressed.—*Ex parte Yarbrough,* 110 U. S. 658; *Rhode Island v. Mass.,* 12 Peters U. S. 723; Sutherland Stat. Construction, § 327, p. 413-14; *U. S. v. Babbit,* 1 Black, U. S. 61; *Gelpcke v. DuBuque,* 1 Wall. 221.

It is very clear from an examination of all that was done in both Houses and the way in which it was done, that it was intended by the adoption of that report, that the Senate should, and did, recede from the two named amendments, and the House should and did concur in all the others.—23 Am. & Eng. Encyc., (1st ed.), 446-7. A report from a Conference Committee *very like* this is found in Senate Journal 1884-5, p. 678, and its adoption enacted a jury law for many counties in this State.—*Abernathy v. State,* 78 Ala. 411-414.

It is a plain principle, that "Statutes may be *amended* as well as *repealed,* by *implication."—Washington v. State,* 72 Ala. 276; Cooley's Con. Lims., p. 182. Therefore there is no reason whatever why a *"Bill"* may not be *amended* by implication, in order to make it conform to the expressed intention of the two Houses, for this Court will "look less at the letter or words of the statute, (report here), than at the context, the subject matter, the *consequences and effects,* and the reason and the spirit of the law, (report and amendments here) in endeavoring to arrive at the will of the lawgiver." *Thompson v. State,* 20 Ala. 62; *Ex parte Joice & Smith,* 88 Ala. 133.

In arriving at the true intent, real meaning of the Legislature in adopting the report of the Conference Committee, this Court will remember the rule: "Contemporary construction, and official usage for so long a time, are among the legitimate aids in the interpretation of statutes."—*Wetmore v. State,* 55 Ala. 201; *Thomas v. State,* 107 Ala. 64; Enlich Interp. Stats. §§ 357, 360-1, 527-8.

"And the greatest deference is shown by the courts to the interpretation put upon the Constitution by the Legislature, in the enactment of laws and other practical applications of constitutional provisions to the legislative business."—Enlich Interp. Stats. § 527, p. 743.

E. K. CAMPBELL and JOHN LONDON, *contra.*—To enact a law requires the concurrence of the House, Senate and Governor. They must each agree to the same things. There can be no doubt that, aside from the Conference Report and action thereon, the House and Senate did not pass the same bill. The House as emphatically as it could, declared it would not concur in the Senate amendment. If the matter had stopped there, the Lusk Bill was dead; the Governor's signature to the senate substitute would have been nugatory and the action of the Senate in subsequently receding from two of its amendments would not have restored vitality to the bill. The important question, therefore, is what was the effort of concurrence by the two houses in the confer-

[Board of Revenue of Jefferson Co. et al v. Crow.]

ence report? It does not appear that the Committee was discharged. The unquestionable fact is that they both agreed that the Senate should recede from two specified amendments. What, if anything else, did they agree to? It is argued for appellant that the maxim, *"expressio unius exclusio alterius est,"* is to be applied; but how applied? That is the important question. They say that because the committee recommended that the Senate recede from two amendments, it impliedly recommended that the House not mentioned in the report adopt all the others. Then why did not the committee say as much? It must be remembered that the Senate's amendment was "the bone of contention," so to speak; and if the above mentioned maxim has any application it would seem to be that the committee, by express recommendation that the Senate recede from two (out of many) amendments impliedly reported that the committee had been unable to agree as to the others. It has been suggested that it is not safe to take what a committee "says, but doesn't mean, for what it means, but doesn't say." Inasmuch as the committee was not discharged the just implication is that it was continued for the purpose of further considering said matters.

Before the Lusk Bill could become a constitutional enactment, the concurrence by the House in the Senate amendment was necessary. This concurrence could be expressed by adopting a conference report that covered all matters of difference. It is entirely reasonable to suppose that members of the House who opposed the passage of the Bill at all would vote to adopt a conference report that struck out part of it and yet desire to vote against the balance of it when put on its passage. They might be willing to shear it of as many of its objectionable features as possible without thereby lending their aid to the adoption of the balance. It is apparent from the House and Senate journals that the bill did not have easy sailing in either house. Members of the Senate may have loaded it down with ame~ which they knew would kill it in the House bers of the House who voted on the co

may have been waiting to exercise their right to vote upon the Bill as thus amended. But this right is denied them, if the conference report, partial in terms, be construed to be a full, report on all the differences involved. An analogy to this proceeding of a Conference Committee may be found in the law relating to arbitrations. These questions are submitted to arbitrators and an award that does not respond to the submissions is no award at all. "The award should have determined definitely all the matters submitted."—*Comer v. Thompson*, 54 Ala. 265. If the award disposes of some matters only, it will be void. 2 Am. & Eng. Enc. Law, 732.

The enrolled bill, as signed by the Governor, shows that there is a difference in the caption of the bill as signed by the Governor and that passed by the Senate. *Moog v. Randolph*, 77 Ala. 597.

McCLELLAN, C. J.—In the House of Representatives of the Legislature of 1903 there was introduced and by it passed a bill to be entitled "An Act to amend sections 897, 898, 900, 914, 915, 916, 917 of Article 1, Chapter 19 of the Code of Alabama." This bill coming into the Senate, that body adopted a substitute for it, then adopted some amendments to this substitute, then passed the bill as amended by the substitute as amended, and thereupon returned the bill to the House with a message that "the Senate has amended as therein shown, and as amended has passed the following House Bill: H. 763. To amend sections 897, 898, 900, 914, 915, 916, 917 of shown by the following entry in its Journal: "The action taken by the House upon this Senate message is shown by the following entry in its Journals: "The House proceeded to the consideration of the Senate message: And the House non-concurred in the Senate amendments to bill, H. 763, the title of which is set out in the above and foregoing message from the Senate, and requested a committee of conference thereon. Committee on part of the House: Messrs. Lusk, Foster, of Loosa, and Benners." ·Of this action the Senate formed by a message from the House, and Senate, as its Journal shows, * * * "in-

[Board of Revenue of Jefferson Co. et al v. Crow.]

sisted on its amendment to the House Bill 763 (the title of which is set out in the foregoing message from the House) and acceded to the request of the House for a committee of conference thereon. The president *pro tem* appointed as the committee on the part of the Senate Messrs. Spraggins, Frazer and Nesmith." Thus is shown disagreement of the Senate and House on this House Bill 763, the raising of a committee of conference between the two houses and the submission of this disagreement to that committee. It is in due course of the discussion to set forth here the nature of the bill upon which this disagreement arose, and the character and scope of the disagreement. As the bill passed the House and went into the Senate it amended section 897 of the Code, which section divided the state into thirteen Judicial circuits, by increasing the number of circuits to seventeen, the addition being of circuits to be numbered fourteen, fifteen, sixteen and seventeen, and apportioned the counties of the state to and among these seventeen circuits. It also amended section 898, having reference to the places of holding circuit courts; section 900 as to the times of holding courts in the several counties of the several circuits; section 914, as to special terms; section 915, as to notice of special terms, order of business, etc.; section 916, relating to witnesses and process, and 917, relating to adjourned terms. One change wrought by the house bill in section 897 was to take counties of Limestone and Madison out of the 8th circuit and to constitute of them a new circuit numbered sixteen, leaving in the 8th circuit the counties of Cullman, Lawrence and Morgan. This section of the house bill was amended by the Senate in two particulars, *first,* by taking Lawrence county out of the 8th circuit and putting it in the 16th, and, *second,* by providing for another circuit in addition to those added by the house bill, to be the 18th circuit and to be composed of the counties of Clay, Cleburne and Randolph. Many and material amendments other than the two just referred to were adopted by the Senate to other sections of the house bill by its substitute therefor and its amendments of its substitute. These other amendments had reference in

the main to the time for holding courts in several of the circuits, but there were others, providing, for examples, that no grand jury should be organized for the circuit court of Montgomery, "unless in the opinion of the presiding judge the public good requires it," that "the solictor of the ninth circuit now residing in the territory constituting the seventeenth judicial circuit under this act shall discharge and perform the duties of solicitor therein until his successor is elected and qualified," that "the judge of the ninth circuit as it now exists by law shall hold court and perform all other duties now required by law in such circuit until the general election in 1904, at which election there shall be elected a judge for the ninth and seventeenth circuits who shall take charge of their offices as provided by law," that in the event of the establishment of the circuit court of Jefferson county as provided in House Bill 967, consolidating the several courts of that county, etc., this act in so far as it relates to the Tenth Circuit shall not go into effect, etc., etc.

Having thus in mind, in a general way, the provisions of the house bill when it went to the Senate and the nature of the amendments of it adopted by the Senate, we recur to the journals of the houses for the proceedings and reports of the members of the conference committee, and for the proceedings of the respective houses thereon. The Senate journal shows two such reports as follows: "Report of a Conference Committee.

"Mr. Spraggins submitted the following report:

"Mr. President: We, the undersigned as a majority of the committee of conference on the disagreement of the two houses on the substitute by the Senate for the house bill, H. 763, To amend sections 897, 898, 900; 914, 915, 916, 917 of Article 1 of Chapter 19 of the Code of Alabama, beg leave to report that they recommend that the Senate recede from its amendment adding the Eighteenth Judicial circuit and from the amendment taking

Lawrence county out of the eighth circuit and putting it in the sixteenth circuit.

Respectfully submitted,

ROBERT E. SPRAGGINS,

of the committee on the part of the Senate.

J. A. LUSK,

J. M. FOSTER,

AUGUSTUS BENNERS,

Committee on part of the House."

"Minority Report.

"Mr. President: We the undersigned members of the committee of conference on the disagreement of the two houses on the senate substitute for the House Bill H. 763, To amend sections 897, 898, 900, 914, 915, 916, 917 of Article 1 of Chapter 19 of the Code of Alabama, report that we rcommend that the Senate do not recede from the amendments to the substitute.

Respectfully submitted,

C. C. NESMITH,

TOM S. FRAZER,

Of the Committee on part of the Senate."

In the further proceedings in the Senate, the report signed by Senator Spraggins and the members on the part of the house of the conference committee was styled, and treated as the "majority report," and that signed by Senators Nesmith and Frazer the "minority report," of the committee. On the coming in of the reports, a motion was made to substitute the minority report for the majority report. This motion was lost; and thereupon "the Senate concurred in the report made by the majority of the committee," the yeas and nays being entered upon the Journal.

On the House Journal are the following entries:

"Report of Committee of Conference.

"The following report was submitted by the House Chairman of the Committee of Conference. Majority report of conference committee: The undersigned, as a minority of the Senate Conference Committee on the substitute for House Bill No. 763, and the House Committee beg leave to report that they recommend that the

Senate recede from its amendment adding the eighteenth judicial circuit, and from its amendment taking Lawrence county out of the eighth circuit and putting it in the sixteenth circuit.

ROBERT E. SPRAGGINS,
On part of the Senate.
J. A. LUSK,
J. M. FOSTER,
A. BENNERS,
On part of the House.."

"Minority Report.

"We, the undersigned members of the Conference Committee on House Bill 763 report that we recommend that the senate do not recede from the amendments to the substitute.

C. C. NESMITH,
TOM S. FRAZER."

"On motion of Mr. Lusk, the majority report of the committee of conference was concurred in. Yeas 37, nays 20." The names of those voting are set out on the Journal.

It further appears from the Journals that the bill as enrolled and signed by the Speaker of the House and the President of the Senate contained all the amendments made by the Senate to the House bill except the two referred to in the reports of the conferees creating the eighteenth circuit and transferring Lawrence county from the eighth to the sixteenth circuit, respectively; and it was the bill as thus enrolled which was approved by the Governor.

On the foregoing statements as to House Bill 763 and as to the amendments of that bill by the Senate, and the foregoing excerpts from the Journals of the two houses, the question for decision in this case is: Did the House concur in the Senate amendments to the bill? By the phrase "the Senate amendments" as here employed we mean all the amendments to or changes of the House bill effected by the adoption of the Senate substitute and by the subsequent adoption of amendments to the Senate substitute, other than and except the amendment creating the eighteenth circuit and the

amendment transferring Lawrence county from the eighth to the sixteenth circuit, proceeding, as we do in this connection, upon the assumption that the Senate receded from these two amendments. Such are the facts upon which the case is presented, and such is the question for decision.

The law applicable to these facts and by which this question is to be determined is embodied in Section 64 of the Constitution, as follows: "No amendment to bills shall be adopted except by a majority of the House wherein the same is offered, nor unless the amendment with the names of those voting for and against the same shall be entered at length on the Journal of the House in which the same is adopted, and no amendment to bills by one House shall be concurred in by the other, unless a vote be taken by yeas and nays, and the names of the members voting for and against the same be recorded at length on the Journal; and no report of a committee of conference shall be adopted in either House, except upon a vote taken by yeas and nays, and entered on the Journal, as herein provided for the adoption of amendments." There is no pretense that the House by a yea and nay vote entered on its Journal concurred in any of the Senate amendments to this bill under and in conformity to the second provision of this section, that "no amendment to bills by one House shall be concurred in by the other" except by yea and nay vote enter'd on the Journal. To the contrary, the House Journal, as we have seen, shows quite the reverse to be the fact. It not only shows no such, nor any concurrence, but it affirmatively and expressly shows that the House non-concurred in all the Senate amendments. This vote for non-concurrence was never reconsidered by the House. It stands to-day as the action of the House on those amendments unless it can be said that the House subsequenty concurred in these amendments, its original vote of non-concurrence to the contrary notwithstanding, by adopting the report of a conference committee rcommending concurrence, under and in conformity to the last clause of section 64, providing that "no report of a committee of conference shall be

adopted in either House, except upon a vote taken by yeas and nays and entered on the Journal as herein provided for the adoption of amendments." It has indeed been mooted in this and other jurisdictions whether amendments adopted by one House and disagreed to by the other with request for conference could be constitutionally concurred in by the disagreeing House by the adoption of a conference report recommending such concurrence, the insistence being that under the second provision of section 64, or like provisions in other constitutions that House should rescind its vote of nonconcurrence, and then comply with the recommendation of the committee by a direct vote upon and concurring in the amendments themselves; but it has been adjudged that a vote adopting such a report of a conference committee is in itself a vote of concurrence in the amendments which it recommends concurrence in. *State v. Buckley's Distributees,* 54 Ala. 599; *Ex parte Howard-Harrison Iron Co.,* 119 Ala. 484; *Browning v. Powers,* (Mo. Sup.) 38 S. W. 943. To attain that end, however, in respect of the Senate amendments to this bill by this method of procedure, to effectuate concurrence therein by the adoption by the House of a report of the conference committee, *it was absolutely essential that such report should have recommended concurrence by the House in the Senate amendments.* Nobody questions this proposition. Counsel for appellants confess its soundness. In the nature of things it is clear beyond cavil: The adoption of a report can not be the adoption of any thing not embraced in the report. As has appeared, the reports from this committee which were adopted by the Senate and House, respectively, referred only to certain two of the Senate amendments, and to these for the purpose only of recommending recession from them by the Senate. Neither the report made to the Senate nor that made to the House by the majority of the members of the joint committee recommended that the House concur in any thing. In neither is there the slightest reference to the other Senate amendments. Absolutely no action by the House is recommended, suggested, or referred to in

either of them. And so of the accompanying reports of two of the Senate conferees: They too relate alone and exclusively to the two Senate amendments which only are referred to in the reports which were adopted. It cannot be got from any one of the reports or from all of them that the conference committee even considered any other than these two amendments. It cannot be got from any one or from all the reports that the committee or any of its members intended to recommend concurrence by the House in the numerous other Senate amendments or in any of them. This would seem to be decisive of the question before us, and the end of this case. But just here is interjected the main, indeed the only, contention of the appellants in support of the integrity of this act. While fully confessing that the reports contain no express recommendation as to concurrence in the Senate amendments, nor any sort of reference thereto, counsel for appellants insist that we should read a recommendation of concurrence into the report adopted by the House by implication from the submission to the committee and the situation upon which it acted. We may concede the application of the doctrine of implication to the report of a conference committee, and the enlargement thereby of the scope of the report beyond its letter; but to have such effect the implication must be *a necessary* one, it must be one that is necessary to the effectuation of the intent which is expressed in the report, and without according operation to which the purpose expressed in the report could not be accomplished. If what is expressed may be accomplished without extending the language by implication beyond its own terms, to so extend it could not be said to be necessary and it could not be so extended with requisite certainty and assurance that thereby the effect of the report has not been extended also beyond the intention of the conferees. For the court to apply the doctrine of implication in such a case would be for the court to put into the report something which the makers of it not only have not expressed, but which also there is no certainty that they intended should be covered by it—would be not to interpret or construe a

report made by the committee, but to make a report for the committee, and to hold that the House then acted not upon the report before it, but upon the report we now make—to read into what they did say something which they obviously and confessedly did not say; and all this because we may be, in greater or less degree of conviction, of the opinion, based upon the probabilities of the situation, that they intended the report to have larger operation than its terms import, to say something which they have not said, and to recommend action which they have not recommended. Other judges might be of different opinion; and though all judges and all courts for all time should concur in that opinion, it would yet be founded upon what appears to us to be the probabilities in the premises, and never attain that certainty as to what provisions the two houses have concurred in enacting into law which the Constitution undoubtedly requires. For if the Constitution makers may be said to have been more careful and particular and precise in any one thing more than any other relating to legislative procedure, it is in this very matter of certainty as to the agreement of the houses upon the contents of bills, and specially to the end that there should be no room for doubt, or mere inference, or inconclusive implication as to what amendments to bills in their legislative course have received the sanction of both houses. The recent Convention appreciating the possibility disclosed in the case of *Ex parte Howard-Harrison Iron Co., supra*, of an amendment by one house being incorporated into an act without actual concurrence therein by the other house, and to eliminate even that possibility of provisions being enacted into law upon which both houses had not in fact concurred, added a new provision in section 64 requiring all amendments to be spread upon the Journals. Now, it must not only affirmatively appear upon the Journals that provisions of an act which were put into the bill by amendment received the concurrence by yea and nay vote of each house, but it must also appear upon the Journals precisely what those amendments were. The purpose of the Convention in the ordination of that sec-

[Board of Revenue of Jefferson Co. et al v. Crow.]

tion manifestly was that only amendments which are set out on the Journals and which the Journals affirmatively show received the sanction of the house should be incorporated in the bill; and the provisions of that section are apt to the effectuation of that purpose. They require the fact of concurrence of one house in an amendment adopted by the other to appear with affirmative certainty. They leave nothing to inference, nothing to conjecture, nothing to inconclusive implication. If concurrence is not shown with certainty it is not shown at all. If there is only a probability, even in the highest degree, that concurrence was had, it has not been had. If the action taken can be said to be concurrence only by inconclusive implication, it cannot be said to be concurrence at all. The implication insisted on here for appellants is of this character: It is an inconclusive implication. It is not certain. It is not a *necessary* implication upon the report made and the situation disclosed by the Journal on which the committee acted. The argument proceeds thus: There was disagreement between the houses on all the amendments adopted by the Senate to House Bill 763. The whole matter of this disagreement was referred to the conference committee. The purpose of this reference was that the committee should, if it could, agree upon and report what the houses should do in settlement of the disagreement. The committee having the matter thus before them made a report. That report did not in terms declare that it was to be a settlement of the whole disagreement; but for that the whole matter was submitted to them to report a full settlement, if they could so agree, the report must be read to recommend as a settlement that the Senate recede from certain two of its amendments (which is the sole thing expressly recommended by the report) and by implication that the House concur in the other amendments. But the argument falls to pieces just here: The committee was not bound to recommend a settlement of the whole disagreement. It was perfectly competent for them to agree as to a part of the matters in controversy, and to report as to that part, disagreeing and making no report as to the

10

other part. It is by no means a necessary implication from their recommendation that the Senate should recede from certain two of the amendments that they also agreed that the House should concur in the others, and by the report as to the two intended to recommend that the House should so concur. This recommendation of Senate recession from one thing certainly was not a recommendation of House concurrence in other things; and there was nothing in the situation upon which they acted affording a necessary and certain implication that they intended also . to recommend House concurrence in other things. They may well have been unable to agree as to the other amendments; and those of the committee who favored concurrence may have hoped that those two being eliminated by the adoption of their report, the House itself would take independent action on the others by rescinding its vote of non-concurrence in them, or that another conference committee would be raised which could agree upon a settlement of the whole disagreement, while those of the committee who opposed all the amendments were content with a report which if adopted destroyed some of the amendments and left them opportunity to oppose the others in the House. And so, too, the House might well have understood the report.· We cannot say, there is no basis for affirming with assurance of certainty that members of either the Senate or the House in voting to adopt this report had any other purpose in view than the recession of the Senate from the two amendments referred to in the report. The Senate, previously insisting on all its amendments, did nothing by this vote further than to withdraw its insistence so far as these two were concerned, and consent to their being eliminated. Members of the House may well have voted for the report to get rid of two of the many amendments to all of which they were opposed, without intending to retrace, and without having at all in mind that they were thereby retracing their action on the others, and without intending to consent to their incorporation in the act, but, to the contrary, having it still in mind to persist in their opposition to them.

It is suggested by counsel that it is inferable from the Journals that of the Senate amendments, that creating an eighteenth circuit and that transferring Lawrence county from the eighth to the sixteenth circuit were regarded as the important amendments made by the Senate and constituted in reality the "bone of contention" between the houses and that the other amendments were of secondary importance and really unobjectionable to the House, but were embraced in the vote of non-concurrence only because that was the most convenient and expeditious method of reaching a basis of settlement, it being the last day of the session and little time for action being left. All this may be true; it seems indeed not improbable. But it only leads to the conclusion, that, while the House deemed these other amendments of sufficient importance to be non-concurred in, or for other reason in fact did non-concur in them, they were never afterwards in the minds of either the conferees or the members of the House, so that the former made no recommendation as to them and the latter took no action upon them. However unimportant and secondary these amendments may have been in the estimation of the conferees and of the members, a *status* of legislative non-existence had been given them by the vote of the House, and without revivifying affirmative action, which was never had, they continued non-existent. Though so unimportant as to fail after non-concurrence to challenge the attention of the committee and of the House, they were *material* amendments of the House bill, and so long as the legislative situation involved adoption of them by the Senate and dissent from them by the House, there was and could be no constitutional concurrence of the two houses in the enactment of that bill with or without them. That situation transpired upon the non-concurrence of the House in the Senate's adoption of them, and it continues to this day. If the House really favored these other amendments it is unfortunate indeed that they should have been sent to and inadvertently allowed to remain in the committee of conference.

[Board of Revenue of Jefferson Co. et al v. Crow.]

We have said that a conference report may be en-
larged beyond its letter by *necessary* implication, and
that thereby is meant that a thing which though not
expressed in the report is yet necessary to be done to
consummate the purpose which is expressed, the report
by implication covers that thing, and the adoption of the
report is by implication the adoption of that
thing. The point may be made clearer by illus-
tration: If this report had recommended that the
Senate substitute for House bill 763 should become
law—or should be enacted—or should pass—or some
equivalent phrase—with the amendments as to the
eighteenth circuit and Lawrence county eliminated,
the *necessary* implication would have been that the
Senate recede from those amendments and the House
concur in all the others, and the adoption by the
houses of the report would by *necessary* implication
have been a recission of the Senate as to those
amendments and a concurrence by the House in the
others. So, too, possibly, if the report had set forth
that the committee as and *for a full settlement of the
whole disagreement* between the houses, recommended
that the Senate recede from two certain amendments,
the adoption of that report might by necessary implica-
tion have involved recission by the Senate from those
amendments and concurrence by the House in the oth-
ers, since without such action there could be no full
settlement of the whole disagreement. But the report
made was not of this sort. From its terms read in con-
nection with the situation nobody can know, and it can-
not be affirmed that the committee intended to recom-
mend concurrence by the House or that the House un-
derstood that its adoption was concurrence.

The fact of concurrence by the House must appear on
its Journal by yea and nay vote. It cannot be shown in
any other way. It cannot exist in any other way.
Hence, if it be conceded that this bill was to the knowl-
edge of the House enrolled as having been enacted with
these amendments in it, and that no dissent was made,
no presumption of valid enactment arose therefrom.
If that could be allowed, all the procedure prescribed
by the Constitution could be wholly disregarded. There
are presumptions which attend a bill which has been
signed by the presiding officers and approved by the gov-

ernor; but they do not obtain in respect of any matter which the Constitution requires to affirmatively appear on the journals. The supposition of the members of the legislature that they have adopted, or of the two houses that they have concurred in the adoption of an amendment cannot take the place of a yea and nay vote entered on the journals.

We are not impressed by the argument that the House must have intended concurrence in the other amendments by voting for a report which in terms recommended only that the Senate recede from two specified amendments, because—it is said—to accomplish only that recession it was not necessary for the House to vote at all, and unless it intended something more than that, viz., concurrence in the other amendments, its action was vain, useless and foolish. Now, we cannot affirm that the House would not have done a vain and useless, and, therefore, foolish thing. No man or body of men is immune from that sort of action. And hence, granting the premises of this argument, the conclusion stated is not demonstrated. The consideration—standing alone—might tend to the conclusion that the House intended something more than mere concurrence in the Senate's recession, but it would not enforce that conclusion with the certainty that is requisite here. But it does not stand alone. There is another consideration which deprives it of even evidential force; and that is that, as shown by its Journal, it was the practice and custom of this house to vote on *all* conference reports, whether they recommended, expressly or by necessary implication, action by both houses or action by the Senate alone.

Moreover, we are not prepared to say that it is a vain, useless and foolish thing for the House to adopt the report of a conference committee which recommends only that the Senate recede from an amendment which it has made to a house bill. To the contrary, it would seem that such adoption is necessary to get the amendment out of the bill. Such bill is in the House. The Senate has lost control of it, and is powerless so long as it remains in the House to amend it by striking out an amendment it has engrafted upon. So long as this sit-

uation obtains, the only way for the Senate to recede from such amendment is with the consent of the House and by the adoption of a conference report recommending it, and like adoption by the House is the recognized mode of evidencing the consent of the House to recession by the Senate. Indeed we think it may be said generally that nothing can be accomplished through or by a conference report unless both houses adopt it. So, we conclude, that the fact that the House also adopted this report proves nothing nor tends to prove any thing beyond its concurrence in the Senate's recession from the two specified amendments.

It is claimed for appellants that the case of *Abernathy v. State*, 78 Ala. 411, has a bearing on the question here favorable to their position. This question, nor any like it was raised, discussed or decided in that case. In the opinion, however, there is a statement as to what the report of a conference committee recommended, etc., which gives to that report some similitude to this one, and it appears that legislative action beyond the express terms of the report as stated by the court was had and upheld as valid; but the Journals of that legislature demonstrate that this action which might appear from the opinion to have resulted from the adoption of the report was in fact taken before the conference was requested, and was effected by votes of the Senate amending a House amendment and then adopting it as amended. The proceeding may have been anomalous, but it was not open to the objections made here.

We believe we have discussed all the positions taken by counsel in support of the claim that this bill as signed and approved became a valid enactment, and we have stated the facts and considerations which have constrained us to the conclusion that it was never constitutionally passed by the legislature; and this opinion might properly end here. But it is thought that one other point made by the bill of complaint should be discussed in a tentative way. That point is that the *conference committee* made no report at all on House Bill 763. There are, as we have seen, only two ways by which one House can concur in amendments adopted by the other. One is by yea and nay vote of concurrence. The other by adopting by yea and nay vote the "re-

port of a committee of conference" which recommends concurrence.—Const. § 64; *State v. Buckley's Distributees, supra; Ex parte Howard-Harrison Co., supra.* Now, by all the authorities and in the nature of things, a report of a conference committee must be one in which a majority of the conferees of each house concurs, for a conference committee is essentially two distinct committees each of which acts by a majority, and its "report must be signed by a majority of the members of each House composing the committee."—Const. Manual & Dig. p. 314; Cushing Par. Law.

This sort of report, the only report indeed which can be said to be the report of a conference committee, must have been intended by the Constitutional Convention in the ordination of Section 64, and it would seem therefore, to be the only sort of report to constitute a basis for concurrence in amendments under the last clause of that section. Of course, the dissenting House could upon the failure of a conference committee to make this sort of report, reconsider its vote of non-concurrence and thereupon by yea and nay vote as provided in the second clause of section 64 upon the amendments themselves concur in them, but it would seem that upon such failure that course is the only one by which the House could concur. No report of a conference committee was made to either house in this instance. One report made to each house was signed by all the House members of the dual committee and by a *minority* of the Senate conferees, and the other report made to each house was signed by a majority of the Senate conferees and by none of the House members. The reports which were adopted by the Senate and House, respectivey, show that only one of the three Senate conferees concurred in them. We use the plural in this connection, because what are styled "majority" reports on the Journals of the two houses, are not identical in language. We *decide* nothing on this point; but it seems to us at least open to grave doubt whether even had these so called majority reports recommended that action, the houses by adopting them would constitutionally have eliminated the two specified Senate amendments and concurred in the others.

[Sloss Iron & Steel Co. v. Tilson.]

The decree of the chancery court overruling the de-
murrers to and the motion for want of equity to dismiss
the bill of complaint proceeding as it did, upon the
ground that this bill, signed approved and published
as an act was not passed by the legislature, must be af-
firmed.

Affirmed.