# REPORTS

OF

# CASES ARGUED AND DETERMINED

AT THE JANUARY TERM, 1867.

---

## AARON (A FREEDMAN) *vs.* THE STATE.

[INDICTMENT FOR LARCENY OF HORSES.]

1. *Repeal of criminal statute after sentence, but before its execution.*—When the prisoner in a criminal case, having been sentenced to death, is not executed on the day specified in the sentence, and is brought before the court at a subsequent term to be re-sentenced, (Penal Code, § 378,) the repeal of the law under which he was convicted and sentenced, since the original sentence was pronounced, is a sufficient "legal reason against the execution of the sentence," and requires that he should be discharged. (A. J. WALKER, C. J., *dissenting.*)

2. *Same; saving clause in repealing statute.*—The proviso to the act adopting the new Penal Code, which provides that nothing contained in the repealing clause "shall affect any prosecution now pending, or which may be hereafter commenced, for any public offense heretofore committed," &c., does not apply to a case in which sentence of death was legally rendered before the day on which the new Penal Code went into effect, and, the sentence not having been executed on the appointed day, the prisoner is brought before the court at a subsequent term, after the repeal of the law under which he was sentenced, to be re-sentenced.

FROM the Circuit Court of Tuskaloosa.
Tried before the Hon. JOHN HENDERSON.

THE prisoner in this case, who was a freedman, "usually known and called Aaron Cosby," was indicted in said circuit court, at its November term, 1865, together with another freedman by the name Ely, *alias* Ely Carlisle,

for the larceny of two horses; was tried and convicted at
the same term of the court, and sentenced to be hanged on
the 9th day of March, 1866; and the judgment was af-
firmed by this court, on appeal, at its January term, 1866.
See the case reported in 39th Ala. Rep. 684–90. On the
day appointed for the execution of the sentence, the
military authorities of the United States at Tuskaloosa
interfered, and prevented the sheriff from executing the
sentence of the court; and the prisoner was thereupon
re-committed to jail by the sheriff. At the October term,
1866, the prisoner was again brought before said circuit
court; "and the court proceeded to inquire into the cir-
cumstances of the case, to see whether or not any legal
reason existed why he should not be again sentenced to
death, pursuant to the verdict of the jury and the original
judgment of the court." The prisoner, by his counsel,
urged the repeal of the law under which he was convicted
and sentenced, as a legal reason why he should not be
again sentenced to death; but the court overruled his
objections, and again pronounced sentence of death against
him; to which decision and judgment of the court the
prisoner duly reserved a bill of exceptions.

W. R. SMITH, for the prisoner.
JNO. W. SANFORD, Attorney-General, *contra*.

JUDGE, J.—It is provided by statute in this State, that,
"whenever any person is sentenced to the punishment of
death, the court must direct that he be hanged by the neck
until he is dead"; and that "such sentence must be execu-
ted by the proper executive officer of the law, on such day
as the court may appoint, not less than four, nor more than
eight weeks from the time of the sentence"; and further,
that "when, from any cause, any convict sentenced to death
has not been executed pursuant to such sentence, the same
stands in full force, and the circuit court of the county in
which such convict was tried, on the application of the
solicitor of the circuit, must direct the convict to be brought
before it, or, if necessary, must issue an order in writing
to that effect; or if at large, may issue a warrant for his

apprehension; and upon such convict being brought before such court, it must inquire in the circumstances, and if no legal reason exists against the execution of such sentence, must sentence the convict to execution on a day to be by such court appointed."—Code, § 3638; Penal Code, § 378.

Whilst in England, and in some of the States of the Union, it is not the practice, in cases of capital sentence, for the court to make the day upon which execution is to be done a part of the original sentence; yet such is the practice in this State; and it has been held by this court, that a sentence to capital punishment is defective, if it omit to specify the precise day upon which it is to be executed.—*Russell v. The State*, 33 Ala. 372.

It is also well settled, both in England and in this country, and such in effect is the provision of our statute before quoted, that if the day which has been fixed for the execution of the sentence has passed without its being executed, the court should fix another day; and the judgment remains good, though the time has elapsed, until its command is executed.—1 Bish. Cr. Procedure, § 879. Hawkins, book 2, chapter 51, section 7, says: " It is clear, that if a man, condemned to be hanged, come to life after he be hanged, he ought to be hanged again, for the judgment is not executed till he be dead."

It is furthermore the law, that the repeal of a statute imposing a penalty, though after conviction, arrests the judgment. In such a case, the statute repealed "must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted, and concluded, while it was an existing law."—Sedg. Stat. & Con. Law, 130. But such a result may be prevented by making the repealing law prospective in its operation, or by the insertion of a saving clause therein to prevent the operation of the repeal, and continue the repealed law in force, as to all pending proceedings and prosecutions.

Whilst such is the effect of the repeal of a statute imposing a penalty, after conviction and before sentence, what is the effect if the repealing law intervenes between the judgment or sentence and the execution? In such a case, in the absence of express statutory provision, the execution

of the sentence follows as a necessary consequence, because, after an adjournment of the term at which the sentence is pronounced, there is no process by which the court can regain possession of the cause, and arrest or modify the judgment; and the sheriff, having no discretion, must carry the sentence into execution. For this reason, the effect of a repeal, intervening between the conviction and the sentence, is not the same as when it intervenes between the sentence and the execution. In the latter event, if there be no statutory enactment controlling the question, executive clemency would be the only means of preventing the sentence from being carried into execution.

Was there any sufficient legal reason, within the meaning of section 378 of the Penal Code, before quoted, why the prisoner in this case, when last brought before the court, should not have been re-sentenced to capital punishment? And if any such reason did exist, was the court below invested with the power, under said section, to discharge the prisoner?

The conviction and sentence took place under the act of October 7, 1864, which affixed the punishment of death, or imprisonment in the penitentiary, at the discretion of the jury trying the case, for the larceny of any "horse, mare, gelding, colt, filly, or mule." This act was repealed by the "Act to establish a new Penal Code," which repealing act did not take effect until the Penal Code went into operation under the proclamation of the governor, which was on the 1st day of June, 1866.—Penal Code, pp. 7-8. Thus, between the first and last sentence of the prisoner to capital punishment, the law under which he was tried and convicted was repealed. This was a sufficient legal reason why the prisoner should not have been again sentenced to the punishment of death; for, as before stated, (and there is no conflict of authority upon the point,) if the repeal had occurred after conviction, and before sentence, it would have arrested the judgment.

If, when the court was called upon to sentence the prisoner a second time, its power was restricted to the simple duty of fixing another day for the execution, (an act not involving the exercise of such judicial power as would give

Aaron (a freedman) v. The State.

the court control over the judgment,) the intervening repeal could not have been regarded by the court. Such was held to be the law in *Addington's case,* 2 Bailey, 516. But, under the operation of section 378 of the Penal Code, the power of the court was not thus restricted. By that section, it was made the duty of the court to *"inquire into the circumstances, and if no legal reason existed against it,"* to re-sentence the prisoner. But, if any such legal reason did exist, it was the duty of the court, within the meaning of the Code, to have discharged the prisoner. Otherwise, the ascertainment of any legal reason against the execution of the sentence would be a vain and nugatory act. The meaning of the provision that the original sentence is to "stand in full force," is, that the convict is not to be discharged solely because of the day having passed which was fixed for his execution; nevertheless, the court must, in such a case, perform the duties enjoined upon it. But, in making the necessary inquiry, the court, within the meaning of the Code, is restricted to the consideration of legal reasons founded upon circumstances occurring subsequent to the original sentence. Therefore, its powers are not as extensive over the judgment, as were the powers of the court at the term at which the case was tried; and such is not our argument. To hold that a *pardon* would be the only legal reason which the court might consider and act upon, in such a case, would be doing violence to the plain language of the statute—would be to legislate under the guise of judicial interpretation.

If the intervening repeal of the law under which the prisoner was convicted and sentenced, was not a sufficient legal reason to authorize his discharge, the sentence of death would be executed, when there was no law in existence to authorize it—a proposition abhorrent to justice as well as to mercy.

If the repeal had intervened between the conviction and the sentence, that, as we have seen, would have been a sufficient legal reason for arresting the judgment. Is the legal reason against execution, when the prisoner is brought before the court to be re-sentenced, any the less potent or sound, if the repeal occurs between the original and second sentences? Is it *wrong* to hang a man under a law which

has been repealed, if the repeal occurs between the conviction and the original sentence, and *right* to hang him, if the law is repealed after the original and before the second sentence? If such a distinction exists, it can rest upon no solid reason or sound principle.

We should feel justified in our construction of section 378 of the Penal Code, even if its correctness was not free from doubt, for the law is mild and merciful in its intendments towards those who are the objects of punishment; and, under the circumstances of this case, we feel that we occupy the safest and strongest ground in adopting that construction which favors human life.

2. One other question remains to be considered. The saving clause in the act repealing the act of the 7th of October, 1864, has no application to this case. It is in the following words : "*Provided, however,* that nothing in this section contained shall affect any prosecution now pending, or which may be hereafter commenced, for any public offense heretofore committed, or which may hereafter be committed at any time prior to the day on which said new Penal Code shall go into effect, as by this act provided."— Penal Code, pp. 7, 8. The prosecution of the prisoner was commenced and had ended, by a final judgment in the court below, and an affirmance thereof in this court, *before the repealing act took effect.* The saving clause, being an enactment penal in its character, must receive a strict construction ; and being thus construed, it cannot reach the case of the prisoner.

The sentence of the court below must be reversed, and the prisoner discharged from custody.

A. J. WALKER, C. J.—Section 378 of the Penal Code authorizes the court to withhold the sentence, when "a legal reason" exists why it should not be inflicted. The repeal of the law under which the original conviction and sentence were had, is not, in my opinion, a legal reason for withholding the sentence. The statute does not ascertain what is a "legal reason" for not passing the sentence. It leaves the question as to what constitutes such legal reason to the determination of principles not announced in it, and

Aaron (a freedman) v. The State.

to be found elsewhere. Those principles must be the principles of the common law. The question is, therefore, reducible to the inquiry, whether the repeal of a statute after a conviction and sentence, and after the adjournment of the court by which the sentence was pronounced, is a legal reason for not inflicting the punishment prescribed in the repealed statute. It certainly is not. A repeal of a statute, without a saving clause, will prevent a conviction or sentence under it, or even justify an arrest of the judgment, on motion made during the term. But, the court having adjourned, its judgments are final and conclusive, unless set aside upon a direct proceeding for that purpose. If such repeal be a legal reason for not executing a sentence, the sheriff should always be arrested, if the repeal occurs before the day of execution, by writ of *habeas corpus;* and even if the convict were in the penitentiary, he should be released, upon the repeal of the statute under which he was convicted. The concession that a convicted prisoner must be executed on the appointed day, notwithstanding the repeal of the statute under which the conviction was had, in my judgment, yields the entire question; for, if an execution under a law repealed is wrong, it would be a reproach to the system of jurisprudence, which afforded no preventive remedy.

The argument is made, that the court before which the prisoner is brought to be sentenced has the same power, so far as this question was concerned, the court which tried the case had when it passed sentence, and may apply the same principles which the court trying the case could have done. It is contended that, as the court which tried the case would have refused to try the prisoner under a repealed statute, so should the court in this case have withheld the sentence. I admit that, if a statute were repealed betwen the trial and the sentence, the court during the term, while the cause was still *sub judice*, would arrest and vacate the judgment; but I do not admit that the repeal of the statute after the adjournment of the court would authorize a judge, before whom the prisoner was brought to be sentenced, to discharge him. The last named judge has no power to arrest the judgment, as the court

had which tried the case; and the statute seems to guard against the inference of such a power. Its language is, that when, from any cause, any convict sentenced to death has not been executed pursuant to such sentence, the same stands in full force. The sentence standing in full force, it can not be that the power of arresting it can be in any other than an appellate tribunal. The sentence is but the judgment which the law pronounces; and while it stands as the announcement of the law, it is not, in my opinion, the province of a judge to vacate it. The decision of the majority of the court leads to consequences, which I do not think the legislature ever designed. Two men may be convicted under the same indictment, and by the same verdict, and sentenced to be executed on the same day. If the statute is repealed after the sentence, the sheriff must nevertheless proceed to execute the sentence; but, if one of them should escape, he must be discharged, while the other will be lawfully executed. The effect of the sentence is made to depend upon the question whether the prisoner escapes. If he does not escape, he is rightfully executed under the sentence. If he commits a crime by escaping from the officer, when carried before a judge to be re-sentenced, he must be discharged. If the prisoner is pardoned, a case is presented for which the law clearly provides; and this pardon being a legal reason why the sentence should not be executed, would prevent his execution by the sheriff, or his sentence by the court.