## BLAIR v. STATE. (4 Div. 71.)

(Supreme Court of Alabama. Feb. 14, 1924.)

1. Criminal law ⊜⇒364(2)—Testimony as to acts, words, signs, and declarations of defendants constituting part of one continuous transaction held admissible.

Where deceased was killed in altercation with defendant and codefendants, after they had followed deceased from a church, the acts, words, signs, and declarations of each defendant indicating hostility toward deceased, or his father at the church, and in following deceased in haste after he had left the church, held admissible as part of one continuous transaction leading up to, and shedding light on, the final fatal difficulty.

2. Witnesses ⊜⇒363(1)—Cross-examination of one witness as to his feelings toward an opposing witness not admissible.

In a prosecution for murder, wherein the evidence tended to show that deceased had seduced the sister-in-law of defendant on trial, and deceased's father testified to his feelings towards defendants, it was not error to refuse to allow him to be cross-examined as to his feelings toward the sister-in-law's mother, who also testified as a witness.

3. Criminal law ⊜⇒1170½(5)—Cross-examination of one defendant as to whether other defendant had not entered plea of insanity held harmless.

In a murder prosecution, in which defendant had entered plea of insanity, cross-examination of a codefendant as to whether such first defendant had not entered a plea of insanity held harmless.

4. Criminal law ⊜⇒419, 420(1)—Declarations by one defendant's father to such defendant held inadmissible on trial of codefendant.

Testimony as to declarations made by father of a defendant charged with murder to such defendant the day after the homicide, at a time when a codefendant was not present, held not admissible on separate trial of codefendant, being hearsay evidence.

5. Criminal law ⊜⇒419, 420(1), 448(2)—Declarations made after difficulty, in defendant's absence, as to responsibility for difficulty, held inadmissible as hearsay and opinion evidence.

Where deceased was killed in an altercation with a son and two sons-in-law of a woman whose daughter he had seduced, a statement by such woman that she could control her boys until the sons-in-law "got with them," indicating that the sons-in-law were more responsible for the difficulty than her sons, held inadmissible against one of the sons-in-law who was not present when it was made as hearsay and opinion evidence.

6. Criminal law ⊜⇒1169(9)—Evidence as to responsibility for homicide held prejudicial to defendant.

Where deceased was killed in an altercation with a son and two sons-in-law, of a certain woman, testimony as to her statement that she could control her boys until the sons-in-law "got with them," indicating that the sons-in-law were more responsible for the difficulty than her sons, held prejudicial to one of the sons-in-law.

7. Homicide ⊜⇒338(1)—Testimony that third person had told witness that defendant and deceased were going to have a "row" held harmless.

In murder prosecution, in which a witness had testified that deceased had tried to purchase a pistol from him, and had made a threat to kill defendant, cross-examination by the state eliciting that witness had not seen defendants have any trouble with deceased, but that another person had told him that they were going to have a "row," held harmless.

8. Criminal law ⊕⊐417(2)—Statements of third person after homicide held inadmissible.

On a trial for murder, testimony as to statements, made after the homicide, by a codefendant's mother-in-law, when defendant was not present, as to her efforts to persuade the codefendant not to have any trouble with deceased, *held* irrelevant and inadmissible.

9. Witnesses ⊕⊐404—State could not impeach witness by contradicting answers on cross-examination eliciting hearsay evidence.

In prosecution for murder, the state, having elicited hearsay evidence on cross-examination of a witness, was concluded by the answers of the witness and could not impeach her by contradicting such answers.

Appeal from Circuit Court, Covington County; Arthur B. Foster, Judge.

Robert Blair was convicted of murder in the second degree, and appeals. Reversed and remanded.

W. W. Sanders, of Elba, for appellant.

The acts or declarations of an alleged co-conspirator or accomplice, in the absence of the defendant and after the consummation of the crime, are not admissible against the defendant on trial. James v. State, 115 Ala. 83, 22 South. 565; Everage v. State, 113 Ala. 103, 21 South. 404; Gore v. State, 58 Ala. 391; Wilkerson v. State, 18 Ala. App. 478, 93 South. 205; Carter v. State, 133 Ala. 160, 32 South. 231. Testimony as to occurrences prior to the difficulty was inadmissible. Hendley v. State, 200 Ala. 546, 76 South. 904; Tallassee Falls v. Parks, 2 Ala. App. 278, 56 South. 588; Marsh v. Fricke, 1 Ala. App. 649, 56 South. 110; T. C. I. Co. v. State, 141 Ala. 103, 37 South. 433; Bolton v. Cuthbert, 132 Ala. 403, 31 South. 358, 90 Am. St. Rep. 914; 4 C. J. 912.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

It was permissible to show all that transpired at the time of the difficulty and leading up to and explanatory of the tragedy. Turner v. State, 17 Ala. App. 514, 85 South. 849; Jones v. State, 17 Ala. App. 394, 85 South. 830; Henderson v. State, 15 Ala. App. 1, 72 South. 590; Moulton v. State, 19 Ala. App. 446, 98 South. 709.

MILLER, J. Robert Blair, Dee Moulton, and Levi Maloy were indicted for killing Otis Kendrick; the indictment charging them with murder in the first degree. They demanded a severance, which was granted by the court, and each was tried separately. Dee Moulton was found guilty by the jury of murder in the second degree, and his punishment was fixed at 15 years in the penitentiary. He appealed from the judgment, which was affirmed by the Court of Appeals, and the writ of certiorari was denied him by this court (98 South. 715[1]) from this judgment of affirmance. D. Moulton, alias, v. State (Ala. App. 4 Div. 863) 98 South. 709.[2] This defendant, Robert Blair, pleaded not guilty and not guilty by reason of insanity; was tried and convicted by the jury of murder in the second degree; his punishment was fixed by the jury at 25 years in the penitentiary; and from a judgment and sentence of the court thereon he prosecutes this appeal to this court.

The defendants Robert Blair and Levi Maloy married sisters of the defendant Dee Moulton. There was evidence that the deceased, Otis Kendrick, was engaged to a sister of the wife of this defendant, seduced her, and refused to marry her, and was under indictment for the offense of seduction when killed. In July, 1922, there was an "all day singing" at Friendship Church. The defendants went to the church in the morning with some of their brothers, and the deceased reached there in the afternoon with Will Cooper. John Kendrick, father of deceased, and his family were at the church. When the deceased arrived at the church, there were signs, words, and acts by the defendants indicating hostility toward the deceased and his father. The deceased and Cooper remained at the church for some time, then left in their buggy on the road toward their homes. There was evidence tending to show this defendant and the other defendants followed, in haste, in their buggies—which was not in the direction of their homes—and then the father of deceased with his family went in his car in the same direction. The defendants overtook deceased about a quarter of a mile from the church, where there was an affray between the parties, in which knives, fists, and pistols were used. Howard Moulton came on the scene after the difficulty commenced. He was killed instantly by the deceased, and was a brother-in-law of this defendant. The codefendants and this defendant were each wounded. Otis Kendrick was severely wounded, lingered for a few days, and died from the wounds. His father was also injured. A discussion of the nature and a description of the different wounds received by the persons engaging in the difficulty is unnecessary.

[1] The acts, words, signs, and declarations of each defendant indicating hostility toward the deceased or his father at the church—leaving in their buggies after the deceased, following him in haste, running into another vehicle in the pursuit of him—were all part of one continuous transaction leading up to and shedding light on the final, fatal difficulty; and there was no error committed by the court in allowing the state to prove them. Armor v. State, 63 Ala. 173; Jordan v. State, 81 Ala. 20, head note 21, 1 South. 577.

Practically all of these alleged errors, here-

---

⊕⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 210 Ala. 656.    [2] 19 Ala. App. 446.

in referred to, were passed upon by this court in the companion case of D. Moulton v. State, supra, and a separate discussion of them is unnecessary.

There are 99 assignments of error, many growing out of what the parties did and said at the church and along the road just before the difficulty, indicating hostility toward the deceased or his father; and, as above stated, the court did not err in allowing proof of them by the state.

[2] The father of deceased testified his feelings were not good towards Blair, Maloy, or Dee Moulton, the defendants. The defendant was not permitted by the court to ask him "if they are not good toward Mrs. Moulton." In this the court did not err, for the reason that, while they were each witnesses, neither is a party to the case. Mrs. Moulton was a witness only in the case, and the mother or mother-in-law of the defendants; and his feeling toward her would have no bearing on his testimony and was immaterial to the issues in the case.

[3, 4] Levi Maloy, one of the defendants, testified for this defendant, and was asked by the state on cross-examination, "Blair has a plea of insanity in this case,' hasn't he?" to which he replied, "I don't know; I suppose he did." This defendant entered a plea of insanity. It was on record and had been stated by the defendant or his attorney to the jury; and this testimony could be of no injury to him, if erroneous. The state on cross-examination was allowed to ask Levi Maloy: "And didn't your father tell you: 'Levi, I tried to get'you to leave that church when I left yesterday afternoon, and you would not do it, and now you have got into trouble, and I don't know who is going to get you out of it; I am not able to do it?'" and he answered, "He did not say it."

Will Smathers, witness for the state, was allowed by the court to testify that on the next day after the fatal difficulty, he was at Mrs. Moulton's house and heard the father of Levi tell him "I tried to get you to leave that church when I left yesterday afternoon, and you would not do it, and now you have got into trouble, and I don't know who is going to get you out of it; I am not able to do it."

This is a declaration by a father to his son, a codefendant, the day after the difficulty; this defendant not being present, and Levi Maloy was not on trial. It may have been relevant evidence on his trial as to him, but it was not admissible against this defendant. It was clearly hearsay evidence against this defendant, as it was made in his absence and the next day after the offense, if any, was committed. James v. State, 115 Ala. 83, head note 1, 22 South. 565; Everage v. State, 113 Ala. 102, 21 South. 404; Delaney v. State, 204 Ala. 685, 87 South. 183; Patterson v. State, 202 Ala. 65, head notes 6, 7, 79 South. 459.

[5, 6] The court allowed Mrs. Walter Nelson to testify she heard Mrs. Moulton, while at the house after the dead body was brought there from the difficulty, say: "She could control her boys all right until Bob and Levi got with them." This was after the difficulty, and this defendant was not present; it was a declaration of his stepmother-in-law to another indicating this defendant and Levi Maloy were more responsible for the difficulty than her sons. She, the mother of Annie, could control her sons until this defendant and Levi got with them. It was hearsay and opinion evidence, clearly inadmissible and erroneous; and coming from that source was highly prejudicial to this defendant. Everage v. State, 113 Ala. 102, 21 South. 404, and authorities supra.

The testimony of Mrs. Cauley as to these statements made by Mrs. Moulton at the same time and place,' after the difficulty, should have been excluded by the court.

[7] Hub Dorsey was a witness for defendant, and on cross-examination by the state, the court allowed the following evidence to go to the jury:

"Well, I could not say that I saw them [defendants] have some trouble with Kendrick that day. There was somebody come to me. I was right side of R. A. King & Sons store, and somebody come to me and said: 'Come here, Dorsey; they are going to have a row.'"

This was at Opp, some time before the fatal difficulty, and the witness was on the police force that day. The court in Moulton v. State, supra, held this evidence was not injurious, and we see no good reason to change that ruling. The witness had testified that Otis Kendrick had tried to purchase from him that day a pistol and said:

"I am going to get me a good gun; I am going to stop this trouble, or I will kill Moulton, Blair, and Maloy."

[8] Julius Ross, witness for the state, went to the place of the difficulty after it had occurred, and while the bodies were there. Mrs. Moulton also came there after the difficulty was over. Witness Ross said he heard Mrs. Moulton, while there, tell Levi Maloy "that she begged him and pleaded with him not to bring his pistol that morning and get into trouble." He also said he heard her repeat the same statement to some ladies in the room of the house some time after the difficulty. This testimony was not relevant against this defendant; it was hearsay testimony as to him, as the difficulty was over, and he was not present at the time the statements were made, and had no knowledge of them. The court erred in allowing it to go to the jury. Everage v. State, 113 Ala. 102, 21 South. 404; Langford v. State, 130 Ala. 74, 30 South. 503, and authorities supra.

The court also erred in allowing Mrs. Johnson to testify that after the difficulty she heard Mrs. Moulton say "she begged her

boys to stay at home that morning and not have any trouble." It was hearsay evidence, declarations by a witness to another witness after the difficulty, and this defendant was not present, did not hear it, and had no knowledge of it. Authorities supra.

[9] Mrs. Moulton on cross-examination by the state testified she made no such statements on the ground after the difficulty or at the house after the difficulty, or at any time. The state laid the predicate on its cross-examination of her. What Mrs. Moulton is alleged to have said to Levi Maloy or others after the difficulty, not in the presence, hearing, or with the knowledge of, this defendant, was immaterial and irrelevant to the issue in the trial of this defendant. It was brought out on cross-examination by the state; the state was concluded by her answers to the questions, and could not impeach her by contradicting such answers. Carter v. State, 133 Ala. 160, 32 South. 231; Baker v. State, 209 Ala. 142, 95 South. 467; Nolan v. State, 207 Ala. 663, 93 South. 529.

For the errors mentioned, this judgment must be reversed. What we have written in connection with the opinion of the Court of Appeals in Moulton v. State, supra, approved by this court, is sufficient to guide the court on another trial.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.