(113 So. 67)

### BACHELOR v. STATE. (5 Div. 976.)

Supreme Court of Alabama. May 5, 1927.

Rehearing Denied June 4, 1927. Further Rehearing Denied June 11, 1927.

**1. Criminal law ⊗═▷528—Confession of accomplice is inadmissible against defendant unless voluntarily affirmed by defendant, or made in defendant's presence while he remained silent.**

To render confession of accomplice as to commission of crime admissible against defendant, it must appear confession was made in defendant's presence and that defendant remained silent, or that defendant voluntarily affirmed truth of accomplice's statement.

**2. Criminal law ⊗═▷528 — Voluntary affirmation by defendant of truth of accomplice's confession is admissible, though subsequently made.**

Defendant's affirmation of truth of confession of accomplice, though subsequently made, is admissible where defendant's mind was free from influence of hope or fear.

**3. Criminal law ⊗═▷519(1)—"Voluntary confession" is that made without influence of hope of leniency or fear of hardship dependent on confession.**

"Voluntary confession" is that made when mind of accused is free from influence of hope or fear excited by menace or encouragement that he would be favorably dealt with if he confessed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voluntary Confession.]

**4. Criminal law ⊗═▷528—Defendant's voluntary statement affirming truth of accomplice's confession and admitting planning of homicide held admissible.**

In prosecution for murder, voluntary statement of defendant affirming truth of accomplice's confession and admitting defendant's plan for commission of homicide *held* admissible.

**5. Criminal law ⊗═▷452(2)—Lay witness, who merely knew person inquired about had died of suicide, was incompetent to give opinion as to deceased's sanity.**

Knowledge of nonexpert witness that defendant's grandmother had died of suicide was not sufficient to qualify him to give opinion as to her mental condition.

**6. Criminal law ⊗═▷452(2)—Mere statement of witness that he knew persons inquired about does not qualify him to give opinion as to their mental condition.**

Mere statement of witness that he knew certain persons does not show sufficient acquaintance and continuous intimacy to enable him to give trustworthy opinion as to their mental condition.

**7. Criminal law ⊗═▷730(12)—Counsel's remark that defendant, claimed to be cry baby, had not shed a tear held not to warrant mistrial in murder prosecution, where withdrawn.**

Comment of counsel in argument relative to testimony that defendant was cry baby, that "I have been watching him during the whole trial and he has not shed a tear," though improper as statement of fact not in evidence, *held* not to warrant directing of mistrial in murder prosecution, where court, on defendant's objection, excluded such remark from jury.

**8. Criminal law ⊗═▷721(3)—Comment that defendant, claimed to be cry baby, had not shed tear during trial held not comment on failure to testify (Code 1923, § 5632).**

In prosecution for murder, statement of counsel in argument that he had watched defendant, claimed to be cry baby, and that defendant had not shed a tear *held* not objectionable as comment on failure of defendant to avail himself of right to testify in his own behalf, under Code 1923, § 5632.

**9. Criminal law ⊗═▷730(14)—Counsel's remarks in murder prosecution that two Chicago criminals caused death of individual named and that defendant, if found insane, would be turned loose in two or three years held cured by corrective instruction.**

Error in statement of counsel in argument in murder prosecution that "two criminals in the city of Chicago caused the death of one Frank," and "if the defendant was found not guilty by reason of insanity he would be sent to the insane asylum and turned loose in two or three years," *held* cured by corrective instruction of court on defendant's objection.

**10. Criminal law ⊗═▷726—Permitting interpretation of statement of defendant's counsel that defendant had forfeited right to liberty and was asking jury not to kill him as admission that insanity plea was not meritorious held not error.**

After defendant's counsel in closing argument stated defendant had forfeited his right to liberty and was merely asking jury not to kill him, permitting prosecuting attorney to interpret remark as admission that there was

⊗═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

no merit in defendant's plea of insanity *held* not error.

**11. Homicide ⊜═253(1)—Conviction of defendant for first degree murder of father-in-law held sustained by evidence.**

Evidence *held* to sustain conviction for first degree murder of defendant's father-in-law, which state claimed defendant planned to enable defendant's wife to inherit portion of estate.

**12. Criminal law ⊜═782(14)—Instruction that jury could not find defendant guilty if reasonably satisfied of mental unsoundness held properly refused.**

Requested charge in murder prosecution that jury could not find defendant guilty, if reasonably satisfied from evidence that he was mentally unsound at time of commission of alleged crime, *held* properly refused.

**13. Criminal law ⊜═796—Instruction that capital punishment is not absolute and unconditional, but alternative, punishment, imposed at jury's discretion, held properly refused as argumentative.**

Instruction that capital punishment is authorized, but not commanded, and is alternative punishment never imposed except at discretion of jury *held* properly refused in murder prosecution as argumentative.

**14. Criminal law ⊜═796—Instruction that jury's determination as to imposition of capital punishment should be controlled by their conscience, not directed by presiding judge, held properly refused as argumentative.**

Requested instruction that capital punishment is never visited except by jury on their own responsibility, and that it is not contemplated that suggestions of their conscience should be directed by presiding judge, *held* properly rejected as argumentative.

**15. Criminal law ⊜═805(1)—Instruction that burden was on defendant to establish plea of not guilty by "reasonable of insanity" held properly refused.**

In murder prosecution, requested instruction as to burden of proof of crime and of defendant's insanity *held* properly refused for expression that burden was on defendant to establish plea of not guilty "by reasonable of insanity."

**16. Criminal law ⊜═913(1)—Unfriendly atmosphere to defendant, accused of murder of father-in-law, held not shown where families had been friendly and defendant's people supported him.**

In prosecution of defendant for alleged murder of father-in-law, atmosphere unfriendly to defendant's interest was not shown where families had been friendly and defendant on trial appeared to have full sympathy and support of his people.

**17. Criminal law ⊜═1188—Case in which sentence was imposed by hanging will be remanded for pronouncement of sentence under new law, where electrocution was adopted pending appeal (Code 1923, §§ 5296, 5309, 5310).**

Where method of execution was changed since pronouncement of sentence from hang-ing, under Code 1923, § 5296, to electrocution, under sections 5309, 5310, former sentence will be annulled and case remanded for sentence in accordance with new statute.

Anderson, C. J., and Gardner, J., dissenting in part.

On Rehearing.

**18. Statutes ⊜═283(2)—Enrolled act, regular on its face and authenticated, is presumed constitutionally enacted, unless contrary affirmatively appears by legislative journals.**

Enrolled act, regular on its face in custody of Secretary of State and authenticated by signatures of President of the Senate and Speaker of the House, is presumed to be constitutionally enacted where legislative journals are silent or leave matter in doubt, unless matters required to be entered in journals are omitted.

**19. Statutes ⊜═285—Legislative record should be construed as a whole.**

Legislative record should be construed as a whole in determining whether statute was constitutionally enacted.

**20. Statutes ⊜═283(1)—Where Governor's message showing correct number of bill sought to be amended accompanied Senate message to House, it is presumed that both houses concurred in passage, though clerical error appeared in Senate message.**

Where Governor's message showing correct number of act accompanied Senate message to House, it is presumed that law was constitutionally enacted and Houses were in concurrence on amendment, notwithstanding clerical error appearing in message from Senate to House relating to section number of bill amended.

**21. Statutes ⊜═248—Time of taking effect of electrocution statute depends on statute's provisions, Constitution, and law relating to taking effect of penal acts (Laws 1923, p. 759; Code 1923, §§ 5295, 5309, 5310, 5320, 5531; Const. 1901, §§ 7, 22).**

Act Sept. 29, 1923 (Laws 1923, p. 759), Code 1923, §§ 5309, 5310, changing method of death penalty to electrocution, must be interpreted as to time of taking effect with regard to its own provisions, Const. 1901, §§ 7, 22 and Code 1923, § 5531 (Code 1907, § 7805), providing no penal law unless otherwise provided, should be effective until 60 days after approval, in view of Code 1923, §§ 5295, 5320.

**22. Statutes ⊜═255—Statute providing for execution of persons sentenced to death held penal law effective 60 days after approval (Laws 1923, p. 759; Code 1923, §§ 5309, 5310, 5531; Code 1907, §§ 7639–7652).**

Act approved September 29, 1923 (Laws 1923, p. 759), Code 1923, §§ 5309, 5310, which adopts provisions of Code 1907, §§ 7639–7652, and provides for execution by electrocution or hanging as determined by date, *held* penal act effective 60 days after approval, under Code 1923, § 5531, inasmuch as time for taking effect is not extended by act itself.

**23. Statutes ⟷225¾—Provisions of prior acts incorporated in statute are considered as part thereof.**

In construing act, prior statutes, which act adopts, are to be treated and considered as incorporated into and forming part of act.

**24. Criminal law ⟷1219—Death sentence by electrocution could be imposed after appeal in lieu of sentence by hanging, where electrocution statute was effective at time of offense (Const. 1901, §§ 7, 22; Code 1923, §§ 5309, 5310).**

Const. 1901, § 7, providing no person shall be punished but by virtue of law established prior to offense, and section 22 denying power to suspend laws except by General Assembly, *held* not to prevent imposition of death sentence by electrocution, under Code 1923, §§ 5309, 5310, on remanding of case after death sentence by hanging had been imposed, where electrocution statute was effective prior to commission of offense.

**25. Criminal law ⟷1192—Repeal of statute conferring jurisdiction to resentence did not deprive circuit court of power to resentence on remanding of case (Code 1907, § 7648; Code 1923, §§ 5309, 5310).**

Repeal of Code 1907, § 7648, designed to confer jurisdiction to resentence where proceedings have terminated in final judgment and jurisdiction was lost by adjournment, *held* not to deprive circuit court of power to resentence prisoner convicted of murder, under Code 1923, §§ 5309, 5310, where continuity of proceedings was maintained by appeal and cause was remanded.

**26. Criminal law ⟷1192—Jurisdiction of trial court to proceed is conferred by mandate of appellate court.**

Jurisdiction of trial court to proceed with case after appeal is conferred by mandate of appellate court; continuity of proceedings being maintained by appeal.

**27. Criminal law ⟷1208(3) — Criminal is charged with notice of law relative to sentence.**

One committing crime is charged with notice of law in effect at time relative to sentence.

Appeal from Circuit Court, Elmore County; George F. Smoot, Judge.

Clyde Reese Bachelor was convicted of murder in the first degree, and he appeals. Judgment affirmed; remanded for sentence.

Defendant was charged with the killing of Lamar C. Smith, his father-in-law. The tendency of the state's evidence is that defendant procured Hayes Leonard, a negro tenant farmer, to kill the deceased, the motive being that upon the death of deceased his daughter, defendant's wife, would inherit a portion of deceased's estate, and thus would defendant profit financially; that Leonard fired the fatal shot with a shotgun through a side window of deceased's residence, while deceased lay upon his bed reading; that defendant stood about 30 yards from Leonard when the shot was fired; that immediately afterwards defendant and Leonard escaped in defendant's automobile, going to defendant's plantation. The defendant's evidence was to the effect that defendant was of unsound mind at the time of the homicide.

Hasty Golden, a witness for the state, testified that he was sheriff of Elmore county and had, the day after the shooting, arrested defendant, Bachelor, and Hayes Leonard in connection with the shooting of deceased, and the two were carried to the Montgomery county jail. The witness was asked if Leonard had made any statement there, in the presence of the defendant, with reference to the shooting. Over defendant's objection, the witness replied in the affirmative, and further testified that there were 6 or 8 men present; that witness knew them all, but could not say whether he could call them all by name; that he knew that neither he nor any one in his presence offered any inducement to or made any threats against Leonard to make a statement; that some one of those present brought Bachelor down there to hear the negro make the statement. The witness further testified that Leonard stated that he shot deceased, and, being asked why, stated that he had done what the defendant told him to do, and that defendant was to pay him for doing it; that he (Leonard) and defendant had been to the house of deceased two or three times before; and that defendant was with him at the time of the shooting, "squatting down by the little peach tree." The witness further testified that Leonard demonstrated with a broom how the shooting had been done, "how he (Leonard) had walked along with the gun until he got on the porch, and how he raised the gun to shoot and his heart failed him; and he said he crawled back and told him (defendant) that there was not but one in the room, and defendant raised up and looked in the window and told him that both of them (deceased and his wife) were in there and when he did he went back and shot." The witness further testified that defendant left the room during the confession, but that he was present when the foregoing part of Leonard's confession was made; that defendant was asked if he wanted to hear what the negro had to say, and defendant said he did not care to argue with the negro.

Defendant's father testified that, in witness' opinion, defendant was of unsound mind, was a weakling; that one of his weaknesses from the time he was a child was that he would break down and cry whenever he talked business with or sought financial aid from witness; that "he has been a cry baby all his life, even when he was a man. It is not a fact that he didn't cry except when he

didn't get what he wanted; he always got what he asked for."

In his closing argument to the jury, counsel for the state made, substantially, the following remarks to which the objections of defendant were sustained:

"Two criminals in the city of Chicago caused the death of one Frank.

"If the defendant was found not guilty by reason of insanity, he would be sent to the insane asylum and turned loose in two or three years."

The following requested charges were refused to defendant:

"D. If you are reasonably satisfied from all the evidence that at the time of the commission of the alleged crime the defendant was mentally unsound, you cannot find him guilty.

"A. I charge you, gentlemen of the jury, that, if you find the defendant responsible, and further find him guilty of murder in the first degree, it becomes your further duty to fix his punishment. Capital punishment is authorized, but it is not commanded or compelled, whatever may be the enormity of the crime. It is not an absolute unconditional, but an alternative, punishment, and it is never imposed except at the discretion of the jury.

"B. I charge you, gentlemen of the jury, that if you find the defendant legally responsible, and further find him guilty of murder in the first degree, it becomes your further duty, under the law, to fix his punishment. In fixing such punishment you may either fix it at imprisonment in the penitentiary for life or at death, in your discretion. Under the law of the state, capital punishment is never visited except by a jury on their own responsibility, controlled only by their own conscience, and it is not contemplated that the suggestions of their conscience shall be directed by the judge presiding or by any human power.

"A-1. The court charges the jury that in the trial of a homicide case, where the plea of not guilty and a statutory plea pleaded not guilty by reason of insanity are both interposed, the burden of proof as to the first plea is upon the state to satisfy the jury beyond a reasonable doubt of the guilt of the defendant, but, as to the second plea, the burden of proof is on the defendant to establish the plea of not guilty by reasonable of insanity to the reasonable satisfaction of the jury by a preponderance of the evidence, and a reasonable doubt is not sufficient to acquit the defendant under this plea. The weight and sufficiency of the evidence as to the one plea is that the state must satisfy the jury beyond a reasonable doubt, whereas, as to the other plea, the defendant must reasonably satisfy the jury by a preponderance of the evidence."

Rushton, Crenshaw & Rushton, of Montgomery, and Oakley W. Melton, of Wetumpka, for appellant.

Testimony as to statements of a codefendant, made after the homicide, in absence of defendant, are not admissible. Delaney v. State, 204 Ala. 685, 87 So. 183; Everage v. State, 113 Ala. 102, 21 So. 404; Blair v. State, 211 Ala. 53, 99 So. 314. Inculpatory admissions in the nature of a confession are subjected to the same rules of admissibility as direct confessions and are therefore prima facie involuntary and inadmissible. Wilson v. State, 84 Ala. 426, 4 So. 383; Shelton v. State, 144 Ala. 106, 42 So. 30; McGehee v. State, 171 Ala. 19, 55 So. 159. The insanity of defendant's ancestors and kinsman on the trial of a criminal case is competent evidence and the exclusion of the same constitutes reversible error.. Russell v. State, 201 Ala. 572, 78 So., 916; Wigmore on Evid. §§ 232, 1936; 14 R. C. L. 621. The remark of special prosecutor to the effect that he had been "watching defendant during the whole trial and he has not shed a tear" was incurable misconduct, and failure of the trial court to grant a new trial constituted reversible error. Constitution 1901, § 6; Code 1923, § 5632; Bestor v. State, 209 Ala. 693, 96 So. 899; Moulton v. State, 199 Ala. 411, 74 So. 454; B. R. L. & P. Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann. Cas. 1914C, 1037; State v. Davis (Mo. Sup.) 190 S. W. 297; State v. Ferrone, 97 Conn. 258, 116 A. 336. The remarks of state's counsel in closing argument constituted misconduct, and a new trial should have been granted. B. R. L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas. 1916A, 543; Moulton v. State, 199 Ala. 411, 74 So. 454; Cole v. State, 104 Tex. Cr. R. 533, 286 S. W. 204. The failure to give defendant's requested charges was reversible error. (A-1 and D) Parrish v. State, 139 Ala. 16, 36 So. 1012; (A and B) Brown v. State, 109 Ala. 70, 20 So. 103. Section 5304 of the Code of 1923 (Code 1907, § 7648) was repealed by operation of section 5320, and said section 5304 was the only law under which a convict could be resentenced. There is now no law by which defendant can be hanged and no court which can direct that he be electrocuted. Aaron v. State, 40 Ala. 307; Ex parte Newton, 94 Ala. 431, 10 So. 549. It is apparent from the whole record that the misnumbering of the section amended was simply a clerical error, in no way misleading. The record is self-correcting, and the bill as finally passed and signed by the Governor is in all respects valid. Geo. Bolln Co. v. North Platte Irrig. Co., 19 Wyo. 542, 121 P. 22, 39 L. R. A. (N. S.) 868; Town of Walnut v. Wade, 103 U. S. 683, 26 L. Ed. 526.

Charlie C. McCall, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., and Holley & Milner, Tate & Renau and Huddleston & Glover, all of Wetumpka, for the State.

The reply that a defendant makes to a statement wherein he is accused of crime is not in the nature of a confession, but is in nature of an inculpatory statement or declaration, and no predicate that it is voluntary is necessary. Meadows v. State, 136 Ala. 74, 34 So. 183. But if required to be shown to have been voluntarily made, the facts and circumstances here show the making of this

statement was voluntary. Heningburg v. State, 153 Ala. 16, 45 So. 246; Bush v. State, 136 Ala. 85, 33 So. 878. At any rate, the statement of the negro was adopted and corroborated by the subsequent confessions of the defendant, thus curing any error that might have been made. Edwards v. State, 205 Ala. 160, 87 So. 179. The question propounded to witness Macon, whether the great-grandmother of defendant was crazy, called for a conclusion of the witness, and, further, no predicate had been laid for such testimony. Braham v. State, ·143 Ala. 28, 38 So. 919; James v. State, 193 Ala. 55, 69 So. 569, Ann. Cas. 1918B, 119; Hollingsworth v. Miller, 212 Ala. 187, 101 So. 881; 16 C. J. 752; Fountain v. Brown, 38 Ala. 72; Ford v. State, 71 Ala. 385; Burney v. Torrey, 100 Ala. 173, 14 So. 685, 46 Am. St. Rep. 33. When the court sustained the objection to the argument of state's counsel and excluded it from the jury, the effect of such argument was cured. Anderson v. State, 209 Ala. 36, 95 So. 175; Burkett v. State, 215 Ala. 453, 111 So. 34; Watkins v. State, 21 Ala. App. 585, 111 So. 43; Cagle v. State, 211 Ala. 346, 100 So. 318. Comment upon the result of a verdict of not guilty by reason of insanity and upon the argument of defense counsel was legitimate argument. Russell v. State, 201 Ala. 573, 78 So. 916; Anderson v. State, 209 Ala. 36, 95 So. 171; Charge D is not a correct statement of law. Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am. Rep. 193. Charges A and B are bad. Brown v. State, 109 Ala. 84, 20 So. 103. To justify a new trial on account of argument of counsel, same must be grossly improper and highly prejudicial. B. R. L. & P. Co. v. Gonzalez, 183 Ala. 286, 61 So. 80, Ann. Cas. 1916A, 543. Section 5320 of the Code of 1923 does not repeal the sections of the Code of 1907 so as to make same imperative against offenses committed prior to the date the new section became operative. Miller v. State, 40 Ala. 54; Miles v. State, 40 Ala. 39; David v. State, 40 Ala. 69; Moore v. State, 40 Ala. 49; Jeffries v. State, 39 Ala. 655. The effect of section 7 of the Constitution is to continue the statutes as to hanging in force as to all offenses committed prior ·to the effective date of the Electrocution Act. Washington v. Dowling (Fla.) 109 So. 588; Shields v. State, 78 Fla. 524, 83 So. 391. To be effective, the repealing act must have been established and promulgated prior to the commission of the offense; and it is not established and promulgated where it is provided that it shall go into effect on a future date. Eliza v. State, 39 Ala. 693; Weatherford v. Weatherford, 8 Port. 174. The Electrocution Act was not validly passed, since the amendment adopted by the House was not the same as that adopted by the Senate.

BROWN, J. [1] To render the confession of Hayes Leonard, made to the witness Golden and others in the Montgomery county jail, admissible against the defendant, it was necessary for the state to show that it was made in the presence of the defendant, and that he remained silent or that he affirmed the truth of the statement, and that such affirmation was voluntarily made. Delaney v. State, 204 Ala. 685, 87 So. 183; Rowlan v. State, 14 Ala. App. 17, 70 So. 953; Everage v. State, 113 Ala. 102, 21 So. 404; Blair v. State, 211 Ala. 53, 99 So. 314; McGehee v. State, 171 Ala. 19, 55 So. 159; Whitehead v. State, 16 Ala. App. 427, 78 So. 467.

[2, 3] However, it was not necessary that it be shown that such affirmation of the truth of the confession was made at the same time and place, but if it was subsequently made and shown to be voluntary—that is, made when the mind of the accused was free from the influence of hope or fear excited by menace or encouragement that he would be more favorably dealt with if he confessed—this is all sufficient to authorize its admission in evidence. Banks v. State, 84 Ala. 431, 4 So. 382.

[4] The court, sitting in banc, after careful consideration of the record is of the opinion that it clearly appears that so much of the alleged confession of Hayes Leonard as was given in evidence through the testimony of witness Hasty Golden was made in the presence of the defendant, and the defendant in a subsequent confession to the witness Sellers, shown to be voluntary, affirmed the truth of Leonard's confession in every material respect by stating:

"That everything this old darkie has said is true, with the exception of one thing, and that was this—when he went up on the porch to fire the fatal shot I was not standing right behind him with a pistol—that part is not true. I was there; I planned everything; I was 20 or 30 steps away when he fired the shot."

Under the rule heretofore stated, this evidence was properly admitted and the rulings of the court in this respect were free from error.

[5] The state's objection to the question to the witness Bill Macon, "Was she crazy before she committed suicide?" referring to defendant's great-grandmother, was properly sustained. The witness had testified that he did not know the name of defendant's great-grandmother, that she died of suicide in about the year 1871. This, under the authorities, was not sufficient to qualify a nonexpert witness to give his opinion that the person inquired about was "crazy." Parrish v. State, 139 Ala. 16, 36 So. 1012; Braham v. State, 143 Ala. 28, 38 So. 919; People v. Harris, 169 Cal. 53, 145 P. 520; 16 C. J. 752.

[6] The same observation is true as to the questions to this witness in reference to the insanity of Roxie Williams, Mat Williams, and Reuben Smith. As to his acquaintance with Roxie Williams, the witness testified:

"I knew her mother, Roxie Williams, Roxie Williams is his great-great-great-grandmother."

As to Mat Williams:

"I knew this boy's great-aunt, the sister of his great-grandmother; she was called Aunt Mat Williams. I don't know how long she has been dead. I knew her in her lifetime, but don't know how old she was when I knew her."

Reuben Smith was shown to be a brother of defendant's paternal great-grandmother, and as to his acquaintance with Reuben Smith the witness testified:

"I knew her brother, Reuben Smith; he has been dead a long time. I knew his mental condition."

This does not show such acquaintance and continuous intimacy on the part of the witness with these parties as would enable him to form an accurate and trustworthy opinion as to their mental condition. Jones v. State, 181 Ala. 63, 61 So. 434; Braham v. State, 143 Ala. 28, 38 So. 919; Parrish v. State, supra.

[7] The record shows, to use the language of the bill of exceptions, that:

"During the opening argument of the state, in commenting upon certain testimony to the effect that the defendant was a cry baby, * * * special counsel for the prosecution used the following expression: 'I have been watching him during the whole trial and he has not shed a tear.' The defendant thereupon objected to the above remark by special counsel for the state, the court sustained the objection and instructed the jury as follows: 'Gentlemen of the jury, any remark with reference to the conduct or appearance of the accused during the trial will not be considered by you. It is an improper statement and should not influence you in making up your verdict.'

"Whereupon the defendant's counsel said to the court, 'If your honor please, I suppose your honor has said what would ordinarily be sufficient, but this is an error that is incurable before this jury and, while I know Judge Tate did not intend to do anything wrong, and I hate to make such a motion, I feel compelled to move the court to direct a mistrial and to discharge the jury and summons another.' The court remarked that it has instructed the jury and overruled said motion to discharge the jury and summons another, and the defendant then and there excepted."

The theory of the appellant, as indicated by his motion to direct a mistrial and his argument here, is that the remark of state's counsel was so grossly improper and highly prejudicial that the corrective action taken by the court was wholly inadequate to remove its injurious effects.

Stated in another way, appellant contends that the remark of the prosecuting attorney falls within the exception to the general rule stated in B. R., L. & P. Co. v. Gonzalez, 183 Ala. 287, 61 So. 84, (Ann. Cas. 1916A, 543), to the effect:

"That, if the improper remarks are of such a character that neither rebuke nor retraction can entirely destroy their sinister influence, a new trial should be promptly awarded, regardless of the want of a proper objection or exception."

In Bestor v. State, 209 Ala. 693, 96 So. 899, cited and relied on by the appellant, the remarks complained of were of a character more calculated to excite prejudice than the remark here in question, and the conduct of counsel was persisted in by a repetition of the objectionable statement, yet the court denied a new trial because no adverse ruling to the appellant in that case was shown. If the conduct complained of in that case was within the exception above stated, adverse rulings and exceptions were wholly unnecessary.

[8] The statement of counsel complained of here was not a violation of the statute which prohibits comment by counsel on the failure of the defendant to avail himself of the right to testify in his own behalf (Code of 1923, § 5632), and while it was the statement of a fact not given in evidence and was improper, yet it was of a fact within the observation of the jury, and, if true, of which they had probably already taken notice; if not true, it was contrary to what the jury had probably observed. We are therefore of opinion that the corrective instruction by the court was sufficient to avert prejudice to the defendant and error will not be predicated on the refusal of the court to direct a mistrial.

[9] The same observation applies to the remarks of the state's counsel made in the closing argument, to which the court sustained objections. Hall v. State (Ala. Sup.) 113 So. 64;[1] Birmingham Electric Co. v. Cleveland, 113 So. 403;[2] Anderson v. State, 209 Ala. 36, 95 So. 171; Cagle v. State, 211 Ala. 346, 100 So. 318; B. R., L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas. 1916A, 543; Russell v. State, 201 Ala. 573, 78 So. 916.

[10] The bill of exceptions recites that counsel for defendant, in his closing argument, "stated, in substance, to the jury that he was not asking that defendant be turned loose; that defendant had forfeited his right to liberty, and he was simply asking the jury not to kill him."

Commenting on this argument, the prosecuting attorney, in the closing argument, stated that counsel for defendant, "in his argument to the jury, said that defendant ought not to be turned loose, that he had forfeited his liberty, *that he admitted there is no merit to his plea of insanity.*" The defendant objected to so much of the statement as is italicized, and the court overruled the objection. In this respect prosecuting counsel did not transcend the legitimate boundary of discussion. Cross v. State, 68 Ala. 476; Birmingham Electric Co. v. Cleveland, post, p. 455, 113 So. 403.

[11] Charges 3, Y, and X, the affirmative charge for the defendant in different forms, were all properly refused.

---

[1] Ante, p. 336.    [2] Post, p. 455.

[12] Charge D was not a correct statement of the law and was properly refused. Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am. Rep. 193; Parrish v. State, 139 Ala. 16, 36 So. 1012.

[13-15] Charges A and B, refused to the defendant, appear to be in the language of Chief Justice Brickell, used arguendo, in the criticism of the oral charge of the court in Brown v. State, 109 Ala. 70, 20 So. 103, in which the majority of the Justices did not concur. They are argumentative and were properly refused. Charge A-1, if not otherwise bad, uses the expression, "not guilty by reasonable of insanity," and for this reason was properly refused.

[16] The "general atmosphere" doctrine, if such it may be denominated, recognized in Moulton v. State, 199 Ala. 411, 74 So. 454, has no application here. The deceased was the defendant's father-in-law, the families of the defendant and the deceased were friendly, intimately associated, and moved in the same social circles, both families living in the same community, and on the trial the defendant appears to have had the full sympathy and support of his people, and, if there was an atmosphere unfriendly to the defendant's interest, it was only such as developed from the enormity of the crime. If this could be said to justify the granting of a new trial, then the more heinous the offense the greater the chance of the accused to obtain a new trial after conviction.

The facts of the Moulton Case clearly differentiate that case from this.

After careful examination of all questions presented on the record, we find no reversible errors, and the judgment of conviction, rendered on the verdict of the jury finding the defendant guilty and fixing his punishment at death, is affirmed.

[17] The appellant was sentenced to "be hanged by the neck until he is dead," and the court ordered the performance of the execution to "be in accordance with section 5296 of the Criminal Code." Since that sentence was pronounced the method of execution has been changed by operation of law, and the sentence, so far as it directs the method of execution, is annulled, and the case is remanded to the circuit court of Elmore county for proper sentence in accordance with the statute. Code of 1923, §§ 5309, 5310; People ex rel. Kemmler v. Durston, 119 N. Y. 569, 24 N. E. 6, 7 L. R. A. 715, 16 Am. St. Rep. 859; Hall v. State, ante, p. 336, 113 So. 64.

The judgment of conviction is affirmed and the case is remanded for proper sentence.

SAYRE, SOMERVILLE, THOMAS, and BOULDIN, JJ., concur.

ANDERSON, C. J., and GARDNER, J., concur except as to the remandment of the case for sentence, they being of opinion that the date for the execution of the death sentence having expired, it is not only within the power of the court, but is the duty of the court to fix the date for the execution of the death sentence and to order the manner of its execution in accordance with the statute now in force. Buford v. State, 118 Ala. 657, 23 So. 1005; Howard v. State, 110 Ala. 92, 20 So. 365; Code of 1923, § 3260.

On Rehearing.

BROWN, J. It is suggested by the Attorney General that the Act approved September 29, 1923 (Laws 1923, p. 759), entitled "an act providing for the execution of convicts, condemned to death, by electrocution, prescribing the procedure in such cases; and repealing all laws or parts of laws in conflict herewith," was not constitutionally enacted, in that the journals of the House fail to show a concurrence of the House in the action of the Senate on the amendment proposed by the Governor.

[18] The rule prevailing in this jurisdiction is that every enrolled act, regular on its face and found in the custody of the Secretary of State, authenticated by the signature of the President of the Senate and the Speaker of the House as prescribed by the Constitution, is prima facie evidence that it was constitutionally enacted, and this presumption can only be overcome by the contrary being affirmatively made to appear by the legislative journals. If the journals are merely silent on the matter, it must be presumed that the Constitution was in all respects followed, unless the silence is as to matters required to be entered in the journals. If the journals leave the matter in doubt, unless it relates to action which must affirmatively appear on the journals, the statute will be sustained. Ex parte Howard-Harrison Iron Co., 119 Ala. 484, 24 So. 516, 72 Am. St. Rep. 928; Montgomery Beer Bottling Works v. Gaston, Judge, etc., 126 Ala. 425, 28 So. 497, 51 L. R. A. 396, 85 Am. St. Rep. 42; Board of Revenue of Jefferson County v. Crow, 141 Ala. 126, 37 So. 469; State ex rel. v. Porter, 145 Ala. 541, 40 So. 144; State ex rel. Crenshaw v. Joseph et al., 175 Ala. 579, 57 So. 942, Ann. Cas. 1914 D, 248; Jackson v. State, 131 Ala. 21, 31 So. 380; 25 R. C. L. 898, §§ 150, 151.

[19, 20] It is sufficient to say that the court, sitting in banc, has examined the journals of both houses, and notwithstanding it appears that a clerical error appears in the message of the Senate to the House as recorded on the House Journal, relating to the section number of the bill dealt with by the amendment suggested by the Governor, it affirmatively appears that the Governor's message showing the correct number, accompanied the Senate message; and when the record is construed as a whole it appears with requisite certainty that the two houses were in concurrence on the amendment, and that the law was constitutionally enacted.

The appellant's contention, now made, is that the Act of September 29, 1923, repeals section 7648 of the Code of 1907, authorizing a resentence of convicts in certain cases, and hence there is no law under which the circuit court is authorized to change the sentence pronounced in the judgment directing the sentence to be executed by hanging to one directing the sentence to be executed by electrocution.

[21] We deem it proper to say that what was said in the original opinion with reference to the repeal of section 5295 of the Code of 1923 was on the mistaken assumption that what appears as section 5320 in printed volume 2 of the Code of 1923 was in the manuscript prepared by the code commissioner when that document was adopted as the Code of Alabama, by the Act approved August 17, 1923 (Laws 1923, p. 127). But on further examination of the question, we find this is not the true state of the law, as that section was merely printed in the Code under authority of section 4 of the act adopting the Code, and hence the Act of September 29, 1923, providing for the electrocution of convicts sentenced to death, must be interpreted in the light of its own provisions, and the provisions of sections 7 and 22 of the Constitution, and section 5531 (§ 7805, Code of 1907), Code of 1923. The last-mentioned section of the Code provides:

"No penal act shall take effect until sixty days after the approval thereof, unless otherwise specially provided in the act."

[22] In determining when this act took effect, a summary of its provisions is useful.

Section 1 provides for the execution of death sentences by electrocution, prescribing the time within which execution may be fixed by the court.

Section 2 names the executioner up until and including January 1, 1927, as the sheriff, or his deputy in case of his absence or disability, and in case of their disability, such persons as may be appointed by the board of convict supervisors.

Section 3 provides for the issuance of the death warrant and its disposition.

Section 4 prescribes the duty of the sheriff and his compensation for transferring the convict to "Kilby prison at Montgomery."

Section 5 provides the place and method of confinement of the convict pending his execution.

Section 6 prescribes the place of execution.

Section 7 provides who may be present to witness the execution.

Section 8 provides for resentence in case of escape and rearrest after date fixed for execution.

Section 9 provides for execution if the arrest is before the date fixed for execution.

Section 10 provides for the procedure by the officers in case of respites granted by the Governor.

Section 11 provides:

"On or before the 1st day of October, 1926, the board of convict supervisors shall begin the construction of such necessary room or building as may be required to carry out the provisions of this act, and shall continue such construction until said room or building is completed; and said board of convict supervisors shall also, on or before the said 1st day of October, 1926, contract for the purchase of such necessary appliances as may be required to carry out the provisions of this act; and when the execution of a person sentenced to the punishment of death is set for a day subsequent to the last day of February, 1927, the execution of such sentence must be as provided in this act; but when the execution of such sentence is set for a day prior to the 1st day of March, 1927, the execution of such sentence must be as now provided by article 7 of chapter 278 of the Code of 1907." (Italics supplied.)

There can be no question that this is a penal statute, within the meaning of section 5531 of the Code, and unless it can be said that it is otherwise provided in the act, it took effect and was established and promulgated as a part of the law of the land on the 29th day of November, 1923. Washington v. Dowling (Fla.) 109 So. 588; Ross v. New England Mtg. Security Co., 101 Ala. 362, 13 So. 564.

[23] This act, by reference, adopts all of the provisions of article 7 of chapter 278 of the Code of 1907, and in construing the act these statutes are to be treated and considered as if incorporated into and formed a part of the act, and when so construed it is complete in itself, providing the method for the execution of convicts condemned to death —by hanging up to and including the last day of February, 1927, and by electrocution after that date. Sloss-Sheffield S. & I. Co. v. Smith, 175 Ala. 265, 57 So. 29; Savage v. Wallace, 165 Ala. 575, 51 So. 605; Darrington v. State, 162 Ala. 63, 50 So. 396; Phœnix Assurance Co. v. Fire Department, 117 Ala. 631, 23 So. 843, 42 L. R. A. 468; Cleveland v. State, 16 Ala. App. 336, 77 So. 930.

Not only this, section 11 of the act specifically provides for the construction of the death room, and authorizes the purchase of the equipment "on or before the 1st day of October, 1926," thus manifesting the legislative intent not to suspend its operation beyond the time provided by section 5531 of the Code.

[24] There can be no doubt, therefore, that this act went into effect on the 29th day of November, 1923, and this being long prior to the commission of the offense for which appellant was convicted, neither the provisions of sections 7 and 22 of the Constitution of this state, nor those of the federal Constitution can be invoked to save the application of this statute to the appellant's case. In re Kemmler, 136 U. S. 436, 10 S. Ct. 930, 34 L. Ed. 519; Aaron v. State, 39 Ala. 684; Eliza v. State, 39 Ala. 693; Luigi Storti v. Commonwealth, 178 Mass. 549, 60 N. E. 210, 52 L. R. A. 520.

[25, 26] There is no merit in the contention that the repeal of section 7648 of the Code of 1907 deprives the circuit court of the power to fix the date for the execution of the sentence of death as provided by law. That statute was designed to confer jurisdiction to resentence, where the proceedings in the case had terminated in a final judgment and jurisdiction had been lost by the final adjournment of the court for the term, but this rule has no application where the continuity of the proceedings is maintained by appeal and the cause remains in fieri, and by the judgment of the appellate court the cause is remanded to the trial court to complete the proceedings. In such cases, the mandate of the appellate tribunal is all that is necessary to confer jurisdiction on the trial court to proceed. Ex parte Adams, 187 Ala. 11, 65 So. 514; Minto v. State, 9 Ala. App. 95, 64 So. 369; State ex rel. Atty. Gen. v. Gunter, 11 Ala. App. 399, 66 So. 844; Wright v. State, 12 Ala. App. 253, 67 So. 798.

Another view, it appears that before the alleged repealing statute was passed this section (7648) had been brought forward and adopted into the Code of 1923, and the subsequent repeal of that section as a part of the Code of 1907 did not repeal it as a part of the Code of 1923.

[27] Aaron v. State, 40 Ala. 307, is not an apt authority. There the law authorizing the death sentence for the offense for which Aaron was convicted was repealed after the conviction and sentence and the time for the execution of the sentence had expired, and he was brought before the court for resentence. Not so here, the law authorizing the death sentence as well as the manner of its execution was in force at the time the appellant committed the murder and has so continued without change. He was put on notice by the law, if he delayed the execution of the sentence by appeal until after the last day of February, 1927, and he failed in his appeal, the sentence of death pronounced against him would be executed by electrocution.

The application is overruled.

All the Justices concur.